JOSEPH R. ASHBY (SBN 248579)
joseph@ashbylawfirm.com
ASHBY LAW FIRM P.C.
1055 West Seventh Street, 33rd Floor
Los Angeles, CA 90017
Telephone: (213) 232-3810
Facsimile: (213) 429-0976

WILLIAM T. O'BRIEN (*admitted pro hac vice*)
williamobrien@eversheds-sutherland.us
JOHN W. LOMAS, JR. (*admitted pro hac vice*)
johnlomas@eversheds-sutherland.us
EVERSHEDS SUTHERLAND (US) LLP
700 6th St NW
Washington, DC  20001
Telephone: (202) 220-8049
Facsimile: (202) 637-3593

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEL FUKS, an individual,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>YURI VANETIK, an individual,<br><br>　　　　　　Defendant. | Case No.: 8:19-cv-1212- FLA (JDEx)<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Pre-trial Conference: May 28, 2021<br>Time: 3:00 p.m.<br>Courtroom: 6B<br>Judge: Hon. Fernando L. Aenlle-Rocha<br><br>Trial Date: June 8, 2021<br>Action Filed: June 18, 2019 |

Pursuant to L.R. 16-4 and the Court's Order of March 29, 2021 (Dkt. #49), Plaintiff Pavel Fuks respectfully submits this Memorandum of Contentions of Fact and Law.

I. INTRODUCTION

This is an action for fraud, intentional misrepresentation, breach of contract, and unjust enrichment. Defendant Yuri Vanetik promised Plaintiff Pavel Fuks a VIP package for the 2017 US presidential inauguration that included prime seating, tickets to exclusive inaugural balls, and access to other special events at a price of $200,000. But when Fuks arrived in Washington DC from Europe, there was no VIP package, no prime seating, no tickets to exclusive balls, and no access to special events. It soon became clear that it was all a scam.

Fuks immediately sought a refund from Vanetik. Vanetik initially expressed sympathy, shifted blame to a purported intermediary—"Meadowood PR"—with whom Vanetik claimed he had contracted to provide the VIP inauguration package, and even purported to be cooperating with Fuks in helping to address the situation with Meadowood PR. But when pressed, Vanetik refused to provide Fuks with a copy of the purported contract and refused even to provide the contact information for Meadowood.

In this action, Vanetik no longer blames the fictitious "Meadowood PR". Instead, he now claims that he paid a significant amount of the money he received from Fuks to a Washington D.C. area public relations firm—that Vanetik identifies as The Keelen Group—to set up a program of events for Mr. Fuks. But Matt Keelen, the Founder and President of The Keelen Group and a widely known and highly regarded lobbyist & political strategist with over twenty years' experience, confirms that neither he nor The Keelen Group prepared any program of events for Vaentik or Fuks, and that the only monies The Keelen Group received from Vanetik was $5,000 to reimburse the cost of

several tickets to one inauguration event that The Keelen Group had purchased for Vanetik at his request.

Notably, this isn't the first time that Vanetik has engaged in fraud. A California Court of Appeals recently found that "substantial evidence" supported a jury's verdict that Vanetik had defrauded a friend out of $750,000. In that case, the trial judge described Vanetik and his father as "artful puppeteers who masterminded the scam that relieved the plaintiff of $750,000," and further found that the "money was used to personally enrich [Vanetik and his father] and enable them to travel the world trolling for more big fish." *Farmers & Merchants Trust Co. v. Vanetik*, G053688 (consol. with G053689, G053978 & G054218) p. 18 (Ct. App., 4th Dist. Feb. 27, 2019) (unpublished portion of opinion).

Unfortunately for Fuks, he got caught on Vanetik's line. Fuks gave Vanetik every opportunity to return the money, but Vanetik refused. In this action, Fuks seeks a full refund of his $200,000, the costs of his travel to the United States for the inauguration, and his attorney's fees and expenses for having to bring this action.

## II. PLAINTIFF'S CLAIMS

### A. Summary of the Claims Plaintiff has Pleaded and Plans to Pursue

Plaintiff Fuks asserted the following claims in his Complaint that he plans to pursue:

Claim 1: Defendant Vanetik committed promissory fraud against Plaintiff Fuks when he promised Fuks a VIP inauguration package in exchange for $200,000.

Claim 2: Defendant Vanetik is liable to Plaintiff Fuks for Vanetik's intentional misrepresentation that he could obtain a VIP inauguration package for Fuks in exchange for $200,000.

1  Claim 3: Defendant Vanetik breached his contractual obligation to provide a
2  VIP inauguration package to Plaintiff Fuks.
3  Claim 4: Defendant Vanetik converted the specific sum of $200,000 from
4  Plaintiff Fuks.
5  Claim 5: Defendant Vanetik has been unjustly enriched at Plaintiff Fuks's
6  expense.
7  Claim 6: Defendant Vanetik has violated Cal. Business & Professions Code
8  Section 17200 et seq., by misrepresenting the character and nature of his business.

**B.   Elements of Plaintiffs' Claims**

Claim 1: Promissory Fraud.

1. Defendant Vanetik promised Plaintiff Fuks he would perform a future action;
2. Defendant did not really have that intent at the time that he made his promise (i.e., the promise was false);
3. Plaintiff Fuks justifiably relied on Defendant's false promise;
4. Defendant's false promise caused Plaintiff Fuks to take a detrimental course of action;
5. Plaintiff's detrimental action taken by the plaintiff caused his asserted damages.

See *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1060-62 (2012); *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 973-974 (1997); *Tenzer v. Superscope, Inc.* 39 Cal.3d 18, 30 (1985).

Claim 2: Intentional Misrepresentation.

1. Defendant Vanetik represented to Plaintiff Fuks that a fact was true;
2. Defendant Vanetik's representation was false;

3. Defendant Vanetik knew that the representation was false when he made it, or that he made the representation recklessly and without regard for its truth;
4. Defendant Vanetik intended that Plaintiff Fuks rely on the representation;
5. Plaintiff Fuks reasonably relied on Defendant Vanetik's representation;
6. Plaintiff Fuks was harmed; and
7. Plaintiff Fuks's reliance on Defendant Vanetik's representation was a substantial factor in causing him harm.

*See Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1060-62 (2012).

Claim 3: Breach of Contract

1. A contract existed between Plaintiff Fuks and Defendant Vanetik;
2. Plaintiff Fuks performed his obligations under the contract;
3. Defendant Vanetik breached his obligations under the contract; and
4. Defendant Vanetik's breach harmed Plaintiff Fuks.

*See Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014).

Claim 4: Conversion

1. Plaintiff Fuks has a right to a specified sum of money;
2. Defendant Vanetik has unlawfully interfered with Plaintiff Fuks's right to the sum of money by refusing to return it after Plaintiff demanded its return;
3. Plaintiff Fuks has not consented to Defendant Vanetik retaining the money; and

    4. Plaintiff Fuks was harmed by Defendant Vanetik's refusal to return the money.

*See Fearon v. Department of Corrections*, 162 Cal.App.3d 1254, 1257 (1984); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384, 395 (2007).

Claim 5: Unjust Enrichment

    1. Defendant Vanetik received a benefit from Plaintiff Fuks; and

    2. Defendant Vanetik's retention of the benefit is an unjust and at Plaintiff Fuks's expense.

*See Unilogic, Inc. v. Burroughs Corp.*, 10 Cal.App.4th 612, 627–628 (1992); Rest., Restitution, § 1.

Claim 6: Violation of Cal. Business & Professions Code Section 17200 et seq.,

    1. Defendant Vanetik misrepresented the character and nature of his business; and that

    2. Plaintiff Fuks reasonably relied on Defendant Vanetik's misrepresentation about the character and nature of his business; and

    3. Plaintiff Fuks was harmed by his reliance on Defendant Vanetik's misrepresentation about the character and nature of his business.

*See* Cal. Bus. & Prof. Code § 17200; Cal. Bus. & Prof. Code § 17505.

**C.**    **Description of the Key Evidence Underlying Plaintiffs' Claims**

Claim 1: Promissory Fraud

The key evidence for Plaintiff's Promissory Fraud claim includes:

  (1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, his payment of $200,000 to Defendant Vanetik for the promised VIP inaugural package, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility;

  (2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik;

  (3) the invoice for the $200,000 and related correspondence;

  (4) a receipt for the receipt for payment of funds; and

  (5) Defendant Vanetik's interrogatory responses.

Claim 2:  <u>Intentional Misrepresentation.</u>

The key evidence for Plaintiff's Intentional Misrepresentation claim includes:

  (1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, his payment of $200,000 to Defendant Vanetik for the promised VIP inaugural package, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility;

  (2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik;

  (3) the invoice for the $200,000 and related correspondence;

  (4) a receipt for the receipt for payment of funds; and

  (5) Defendant Vanetik's interrogatory responses.

Claim 3:  <u>Breach of Contract</u>

The key evidence for Plaintiff's Breach of Contract claim includes:

(1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, his payment of $200,000 to Defendant Vanetik for the promised VIP inaugural package, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility;

(2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik;

(3) the invoice for the $200,000 and related correspondence;

(4) a receipt for the receipt for payment of funds; and

(5) Defendant Vanetik's interrogatory responses.

Claim 4: Conversion

The key evidence for Plaintiff's Conversion claim includes:

(1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, his payment of $200,000 to Defendant Vanetik for the promised VIP inaugural package, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility;

(2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik;

(3) the invoice for the $200,000 and related correspondence;

(4) a receipt for the receipt for payment of funds; and

(5) Defendant Vanetik's interrogatory responses.

Claim 5: Unjust Enrichment

The key evidence for Plaintiff's Unjust Enrichment claim includes:

(1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, his payment of $200,000 to Defendant Vanetik for the promised VIP inaugural package, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility;

(2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik;

(3) the invoice for the $200,000 and related correspondence;

(4) a receipt for the receipt for payment of funds; and

(5) Defendant Vanetik's interrogatory responses.

<u>Claim 6: Violation of Cal. Business &Professions Code Section 17200 et seq.</u>,

The key evidence for Plaintiff's claim for Violation of Cal. Business & Professions Code Section 17200 et seq. includes:

(1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, his payment of $200,000 to Defendant Vanetik for the promised VIP inaugural package, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility;

(2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik;

(3) the invoice for the $200,000 and related correspondence;

(4) a receipt for the receipt for payment of funds; and

(5) Defendant Vanetik's interrogatory responses.

## III. DEFENDANT'S AFFIRMATIVE DEFENSES[1]

### A. Summary of Defendant's Affirmative Defenses

In his Answer, Defendant Vanetik asserted eighteen affirmative defenses. Dkt. #23 at 4-7. On March 22, 2021, Defendant represented that he planned to pursue just his First, Second, Fifth, Eighth, Twelfth, Fourteenth, Sixteenth, and Seventeenth Affirmative Defenses. Dkt. #46 at 7-8. Defendant subsequently expressly abandoned his First Affirmative Defense. Dkt. #54 at 12. That leaves the following seven Affirmative Defenses asserted by Defendant:

<u>Affirmative Defense 1</u>: Defendant's "Second Affirmative Defense of Unclean Hands"

<u>Affirmative Defense 2</u>: Defendant's "Fifth Affirmative Defense of Estoppel"

<u>Affirmative Defense 3</u>: Defendant's "Eighth Affirmative Defense of Consent"

<u>Affirmative Defense 4</u>: Defendant's "Twelfth Affirmative Defense of Release"

<u>Affirmative Defense 5</u>: Defendant's "Fourteenth Affirmative Defense of Failure to Mitigate"

<u>Affirmative Defense 6</u>: Defendant's "Sixteenth Affirmative Defense of No Reasonable Reliance"

<u>Affirmative Defense 7</u>: Defendant's "Seventeenth Affirmative Defense of Standing"

---

[1] Defendant has not asserted any counterclaims in this action.

### B. Elements of Defendant's Affirmative Defenses

<u>Affirmative Defense 1: Unclean Hands</u>

To establish the Affirmative Defense of Unclean Hands, Defendant must prove that:

1. Plaintiff engaged in misconduct;
2. The misconduct occurred in a transaction directly related to the matter before the courts; and
3. The misconduct infects the cause of action before the court.

*See California Satellite Systems, Inc. v. Nichols* (1985) 170 Cal. App. 3d 56, 70 [216 Cal. Rptr. 180]; *Carman v. Athearn* (1947) 77 Cal. App.2d 585, 598 [ 175 P.2d 926].

<u>Affirmative Defense 2: Estoppel</u>

To establish the Affirmative Defense of Estoppel, Defendant must prove that:

1. Plaintiff made a representation as to a material fact that is contrary to a later-asserted position;
2. Defendant relied on that representation; and
3. Defendant changed his position to his detriment because of that representation and his reliance thereon.

<u>Affirmative Defense 3: Consent</u>

To establish the Affirmative Defense of Consent, Defendant must prove that Plaintiff consented by words or conduct to the conduct by Defendant that caused Plaintiff harm.

Affirmative Defense 4:  Release

To establish the Affirmative Defense of Release, Defendant must prove that Plaintiff agreed that Defendant would not be held responsible for a negative outcome.

Affirmative Defense 5:  Failure to Mitigate

To establish the Affirmative Defense of Failure to Mitigate, Defendant must prove that:

    1.  Plaintiff's damages could have been avoided with reasonable efforts or expenditures; and

    2.  Plaintiff did not take reasonable steps to avoid harm.

*See* Judicial Council of California, Civil Jury Instructions 358. Mitigation of Damages, pg. 176

Affirmative Defense 6:  No Reasonable Reliance

Reasonable reliance is an element of Plaintiff's Promissory Fraud and Intentional Misrepresentation claims.  An assertion that an element of a claim is not met is not an affirmative defense.

Affirmative Defense 7:  Standing.

For his Affirmative Defense of "Standing", Defendant asserts that there is no contract between Plaintiff and Defendant.  The existence of a contract is an element of Plaintiff's breach of contract claim.  An assertion that an element of a claim is not met is not an affirmative defense.

### 4. Evidence in Opposition to Defendant's Affirmative Defenses

<u>Affirmative Defense 1:  Unclean Hands</u>

As an initial matter, Defendant has not identified any misconduct that supports the assertion of the affirmative defense of unclean hands to Plaintiff's claims in this action.

Evidence in opposition to Defendant's Affirmative Defense of Unclean Hands includes (1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility; and (2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik.

<u>Affirmative Defense 2:  Estoppel</u>

As an initial matter, Defendant has not identified any representation by Plaintiff of a material fact that is contrary to Plaintiff's asserted positions in this case, nor any reliance or detrimental change in position.

Evidence in opposition to Defendant's Affirmative Defense of Estoppel includes (1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility; and (2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik.

<u>Affirmative Defense 3: Consent</u>

As an initial matter, Defendant has not identified any words or conduct by Plaintiff that demonstrates consent to Defendant's failure to provide the promised VIP inauguration package.

Evidence in opposition to Defendant's Affirmative Defense of Consent includes (1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility; and (2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik.

<u>Affirmative Defense 4: Release</u>

As an initial matter, Defendant has not identified any agreement by Plaintiff to not hold Defendant liable for Defendant's failure to provide the promised VIP inauguration package.

Evidence in opposition to Defendant's Affirmative Defense of Release includes (1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility; and (2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik.

<u>Affirmative Defense 5: Failure to Mitigate</u>

As an initial matter, Defendant has not identified any reasonable actions Plaintiff could have taken to prevent the harm caused by Defendant's failure to provide the promised VIP inauguration package.

Evidence in opposition to Defendant's Affirmative Defense of Failure to Mitigate includes (1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility; and (2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik.

### Affirmative Defense 6:  No Reasonable Reliance

As noted above, reasonable reliance is an element of Plaintiff's Promissory Fraud and Intentional Misrepresentation claims.  An assertion that an element of a claim is not met is not an affirmative defense.

Evidence in opposition to Defendant's assertion that there is no reasonable reliance includes (1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's attempts to avoid responsibility; and (2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik.

### Affirmative Defense 7:  Standing

As noted above, for his Affirmative Defense of "Standing", Defendant asserts that there is no contract between Plaintiff and Defendant.  The existence of a contract is an element of Plaintiff's breach of contract claim.  An assertion that an element of a claim is not met is not an affirmative defense.

Evidence in opposition to Defendant's assertion that there was no contract between the parties includes (1) Plaintiff Fuks's testimony concerning Defendant Vanetik's promises and misrepresentations, what Fuks experienced when he arrived in Washington D.C., his request to have his money refunded, and Vanetik's

attempts to avoid responsibility; and (2) the text messages exchanged between Plaintiff Fuks and Defendant Vanetik.

## IV. BIFURCATION OF ISSUES

Plaintiff Fuks does not request a bifurcation of issues.

## V. JURY TRIAL

Plaintiff Fuks requested a jury trial, but is amenable to a bench trial for efficiency purposes and given the COVID pandemic.

## VI. ATTORNEYS' FEES

Plaintiff Fuks seeks attorneys' fees as part of his request for punitive damages under California Civil Code §3294, which provides that "where is it proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

## VII. ABANDONMENT

Defendant has expressly abandoned what he had identified in his Answer as his first, seventh, eleventh, and eighteenth affirmative defenses. Dkt. #54 at 12. Defendant had already previously indicated on that he no longer planned to pursue his third, fourth, sixth, seventh, ninth, tenth, eleventh, thirteenth, fifteenth, and eighteenth affirmative defenses.  *See* Dkt. #46 at 7-8.

DATED: April 30, 2021

ASHBY LAW FIRM P.C.
Joseph R. Ashby

EVERSHEDS SUTHERLAND LLP
William T. O'Brien
John W. Lomas, Jr.

By: ___/s/ *Joseph R. Ashby*___
      Joseph R. Ashby
Attorneys for Plaintiff Pavel Fuks