JOSEPH R. ASHBY (SBN 248579)
joseph@ashbylawfirm.com
ASHBY LAW FIRM P.C.
1055 West Seventh Street, 33rd Floor
Los Angeles, CA 90017
Telephone: (213) 232-3810
Facsimile: (213) 429-0976

WILLIAM T. O'BRIEN (*admitted pro hac vice*)
williamobrien@eversheds-sutherland.us
JOHN W. LOMAS, JR. (*admitted pro hac vice*)
johnlomas@eversheds-sutherland.us
EVERSHEDS SUTHERLAND (US) LLP
700 6th St NW
Washington, DC  20001
Telephone: (202) 220-8049
Facsimile: (202) 637-3593

Attorneys for Plaintiff Pavel Fuks

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PAVEL FUKS, an individual, | Case No.: 8:19-cv-1212- FLA (JDEx) |
| Plaintiff, | **PLAINTIFF PAVEL FUKS' OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| YURI VANETIK, an individual, | |
| Defendant. | |

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| **Fuks** | Plaintiff, Pavel Fuks |
| **Plaintiff** | Plaintiff, Pavel Fuks |
| **Vanetik** | Defendant, Yuri Vanetik |
| **Defendant** | Defendant, Yuri Vanetik |
| **FPTO** | Final Pre-Trial Conference Order, Dkt. #65 |
| **AF** | Admitted Facts, FPTO § 5, Dkt. #65 |
| **Tr. I** | Transcript of the First Day of Trial (Sept. 21, 2021), Dkt. #90 |
| **Tr. II** | Transcript of the Second Day of Trial (Sept. 22, 2021), Dkt. #91 |
| **Tr. III** | Transcript of the Third Day of Trial (Sept. 23, 2021), Dkt. #92 |

Pursuant to Federal Rule of Civil Procedure 52 and Local Rule 52-7, Plaintiff Pavel Fuks hereby objects to the proposed findings of fact and conclusion of law submitted by Defendant Yuri Vaneitk (Dkt. #96-1).[1] Most of Defendant's proposed findings are contrary to the credible evidence offered at trial or are immaterial to the claims and defenses at issue. Most of Defendant's conclusions of law are also contrary to the credible evidence offered at trial. Many aren't even conclusions of law or are otherwise immaterial.

Generally, Defendant's proposed findings of fact and conclusions of law rely on accepting a story told by Defendant Vanetik at trial that is contrary to the documentary evidence, the timeline, and common sense, and that is also internally inconsistent.

As one example, Vanetik admits that he communicated with Fuks via WhatsApp messages, but attempts to disclaim nearly all of the WhatsApp messages exchanged between him and Fuks that are in Ex. 1, the text file export from Fuks's phone, incredibly contending—with no evidence of course—that those messages were fabricated.

Meanwhile, Vanetik—in Ex. 13—selectively offered screenshots of a handful of WhatsApp messages between Fuks and Vanetik from March 2016, but

---

[1] Local Rule 52-7 provides that "Opposing counsel may, within seven (7) days after service of a copy of a document prepared pursuant to L.R. 52-1, 52-2, or 52-4 file and serve objections to the form of the document and the grounds thereof." Local Rules 52-1 and 52-2 concern proposed findings of fact and conclusions of law. Defendant, like Plaintiff, served proposed findings of fact and conclusions of law on November 19, 2021. Seven days after service was the Friday after Thanksgiving Day, which, as the Ninth Circuit has held multiple times, is a day declared to be a holiday by the State of California. *See Dwyer v. Duffy,* 426 F.3d 1041, 1044 (9th Cir. 2005) (holding the day after Thanksgiving is a legal holiday under Bankruptcy Rule 9006(a)); *Yepremyan v. Holder,* 614 F.3d 1042, 1044 (9th Cir. 2010) (holding the day after Thanksgiving is a legal holiday under Federal Rule of Appellate Procedure 26(a)). Thus, under Federal Rule of Civil Procedure 6(a)—and specifically 6(a)(1) and 6(a)(6)(C)—the deadline to file and serve objection ran until Monday, November 29, 2021.

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

none of the other messages or emails he claimed he had exchanged with Fuks. <u>See</u> Tr. II 86:1 – 90:16.  In an attempt to explain away that he offered none of the emails or other messages he claimed to have exchanged with Fuks, Vanetik bizarrely claimed that he gave his phone to the FBI for a few weeks and could no longer access apps on his phone after getting it back. <u>See</u>, <u>e.g.</u>, Tr. II 86:1 – 87:24, 89:23 – 90:16, 134:20 – 136:6.

In another example, Defendant's Proposed Finding of Fact 7 states that:

> In approximately **April 2016**, Fuks contacted Vanetik and told him to proceed with the work. Odyssey worked on the project for **approximately four months**. Odyssey prepared a draft feasibility study **pursuant to paragraph 1.2** of the agreement entered into with Fuks. The draft was emailed to the lawyer working for Mayor Kernes.

Dkt. #96-1 ¶ 7 (emphasis added). So Defendant is claiming work he allegedly did for Gennady Kernes under a purported contract with Fuks started around April 2016, lasted for four months, and included a feasibly study pursuant to paragraph 1.2 of the contract, but the purported contract is dated September 21, 2016. <u>See</u> Ex. 10 at p.1. It also provides for an initial retainer of $250,000 plus an additional $50,000 a month (<u>see id</u>. § 1.3), but Vanetik produced just one invoice, which is dated November 19, 2016 and is for $200,000 (Ex. 2), or the amount for two VIP inauguration tickets at the $100,000 price per person quoted by Vanetik to Fuks (<u>see</u> Ex. 1., p.22). And while the email from Vanetik with the invoice from his yuri@vanetik.com account is in evidence (Ex. 2), there is no email nor any other communication showing that the alleged Odyssey contract was sent to Fuks or to anyone else.

This is nothing new for Vanetik. In a California Superior court decision affirmed by the California Court of Appeals in another case involving a fraud claim against Vanetik, the trial court stated that:

> [Vanetik and his father] were the artful puppeteers who masterminded the scam that relieved the plaintiff of $750,000. That money was used to personally enrich [Vanetik and his father] and enable them to travel the world trolling for more big fish. Not a spoonful of dirt was turned in any Russian oil fields. As near the court can recall, there was no

testimony that either of these defendants ever even visited the oil fields with any of the plaintiff's money in their pockets. The jury had little trouble concluding that the Vanetiks should be personally liable for the misdeeds committed behind the screen of some corporate name."

Ex. 21 at PF-000118.

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

# OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS OF FACT

DEF.'S PROPOSED FINDING #1     Plaintiff Pavel Fuks ("Fuks") is a citizen of Ukraine. Fuks testified remotely at trial because the U.S. imposed a five-year travel ban on Fuks.

OBJECTION TO DEF'S. PROPOSED FINDING OF FACT #1

Plaintiff objects to the second sentence of Defendant's proposed finding of fact #1 because the purported fact is immaterial to any of the claims and defenses in this case and is also incomplete (see Dkt. #80) and therefore inaccurate.

DEF.'S PROPOSED FINDING #2     Defendant Yuri Vanetik ("Vanetik") appeared at trial and provided testimony. Vanetik is an attorney who has been admitted to the state bars in Washington, D.C. and Pennsylvania. He is currently only active in Washington, D.C.

OBJECTION TO DEF'S. PROPOSED FINDING OF FACT #2

Plaintiff objects to Defendant's proposed finding of fact #2 because the purported facts are immaterial to any of the claims and defenses in this case, and also because Vanetik indicated that he is a "management consultant" and "private investor" (AF ¶ 2; Ex. 22) and that he does not practice law (Tr. II 140:25 – 141:1).

DEF.'S PROPOSED FINDING #3     Fuks first met Vanetik when the mayor of Kharkov, Gennady Kernes, who was Fuks' friend, asked Vanetik to fly to Rome and meet him. Vanetik was supposed to advise and help the mayor on various issues. The first meeting between Vanetik and Mayor Kernes occurred in in the first quarter of 2016. Mayor Kernes was Fuks' close friend for thirty two years.

OBJECTION TO DEF'S. PROPOSED FINDING OF FACT #3

Plaintiff objects to Defendant's proposed finding of fact #3 because certain of the assertions therein are incomplete or contrary to the credible evidence offered

at trial. <u>See</u> AF ¶ 3; Plaintiff's Proposed Finding of Facts ¶¶ 4-5; <u>see also</u> Tr. III 23:11 - 32:2 (Fuks' testimony in response to questions from the Court concerning certain communications with Vanetik relating to Mayor Kernes, the trip to Rome, and the non-substantive nature of the discussions Fuks had with Vanetik in Rome).

<u>DEF.'S PROPOSED FINDING #4</u>     At their first meeting in Rome, Fuks discussed retaining Vanetik to assist the mayor of Kharkov with various legal problems he was having domestically and abroad.

<u>OBJECTION TO DEF'S. PROPOSED FINDING OF FACT #4</u>

Plaintiff objects to Defendant's proposed finding of fact #4 because it is incorrect and is contrary to the credible evidence offered at trial. <u>See</u> AF ¶ 3; Plaintiff's Proposed Finding of Facts ¶¶ 4-5; <u>see also</u> Tr. III 28:14 - 32:2 (Mr. Fuks' testimony in response to questions from the Court concerning the trip to Rome and the non-substantive nature of the discussions he had with Vanetik in Rome). Fuks did not discuss retaining Vanetik to assist the mayor of Kharkov. <u>See id</u>.

<u>DEF.'S PROPOSED FINDING #5</u>     Eventually, Vanetik's affiliated corporate entity entered into two contracts with Fuks to pay for consulting work which Vanetik and other people performed while working at Odyssey Management ("Odyssey"). Under the first agreement, Odyssey was to be paid $65,000. The second agreement with Fuks required him to pay Odyssey $250,000 plus a $50,000 per month for six months.

<u>OBJECTION TO DEF'S. PROPOSED FINDING OF FACT #5</u>

Plaintiff objects to Defendant's proposed finding of fact #5 as it is incorrect and contrary to the credible evidence presented in this case.

Mr. Fuks confirmed that he had never entered into any agreements with Odyssey Management, nor any agreements with Vanetik other than the agreement

for Vanetik to provide a VIP inauguration ticket package for $200,000. Tr. 1 55:14 – 58:14.

Vanetik did not offer a copy of the purported "first agreement" into evidence—as no such agreement exists. And Mr. Fuks confirmed that he never saw the purported "second agreement" (Ex. 10) and did not sign that document. Tr. 1 56:18 – 57:20.

Further, Vanetik failed to offer a copy of any of the alleged emails in which he either (i) sent the purported "second agreement" to Mr. Fuks (or anyone) or (ii) received the agreement from Mr. Fuks (or anyone). In addition, the agreement is dated September 21, 2016 and states that Mr. Fuks will be invoiced for a $250,000 retainer and, subsequently, for a monthly retainer of $50,000 a month for 6 months. See Ex. 10. The only invoice offered into evidence is an invoice dated November 19, 2016—which is when Fuks and Vanetik were discussing obtaining a VIP inauguration ticket package, in the amount of $200,000—which is the amount for VIP inauguration ticket packages at the $100,000 price that Vanetik quoted to Fuks. Ex. 1 at p.22; Ex. 2.

DEF.'S PROPOSED FINDING #6     Fuks signed the second agreement with Odyssey. Since Fuks negotiated the agreements, was signor to them as a counterparty, and was financially responsible, Vanetik believed the client was Fuks under the agreements, even though he was providing services to Mayor Kernes. Mayor Kernes' name was not mentioned in the document because it could be leaked to the press. At that time, Odyssey was located in Newport Beach, CA. The company had three owners/members consisting of Eric Rogers, Stewart Weingarten and Vanetik. Vanetik was the CEO and the lead responsible for political advocacy for clients at Odyssey.

OBJECTION TO DEF'S. PROPOSED FINDING OF FACT #6

Plaintiff objects to Defendant's proposed finding of fact #6 because it

includes a series of unrelated and immaterial purported facts including purported facts that are contrary to the credible evidence offered at trial.

Mr. Fuks confirmed that he had never entered into any agreements with Odyssey Management, nor any agreements with Vanetik other than the agreement for Vanetik to provide a VIP inauguration ticket package for $200,000. Tr. 1 55:14 – 58:14; see also Tr. III 18:11 – 19:21. Mr. Fuks also confirmed that he never saw the purported "second agreement" (Ex. 10) and did not sign that document. Tr. 1 56:18 – 57:20.

Further, Vanetik failed to offer a copy of any of the alleged emails in which he either (i) sent the purported "second agreement" to Mr. Fuks (or anyone) or (ii) received the agreement from Mr. Fuks (or anyone). In addition, the agreement is dated September 21, 2016 and states that Mr. Fuks will be invoiced for a $250,000 retainer and, subsequently, for a monthly retainer of $50,000 a month for 6 months. See Ex. 10. The only invoice offered into evidence is an invoice dated November 19, 2016—which is when Fuks and Vanetik were discussing obtaining a VIP inauguration ticket package, in the amount of $200,000—which is the amount for VIP inauguration ticket packages at the $100,000 price that Vanetik quoted to Fuks. Ex. 1 at p.22; Ex. 2.

DEF.'S PROPOSED FINDING #7     In approximately April 2016, Fuks contacted Vanetik and told him to proceed with the work. Odyssey worked on the project for approximately four months. Odyssey prepared a draft feasibility study pursuant to paragraph 1.2 of the agreement entered into with Fuks. The draft was emailed to the lawyer working for Mayor Kernes.

OBJECTION TO DEF'S. PROPOSED FINDING OF FACT #7

Plaintiff objects to Defendant's proposed finding of fact #7 because the purported fact is contrary to the credible evidence offered at trial.

Mr. Fuks confirmed that he had never entered into any agreements with Odyssey Management, nor any agreements with Vanetik other than the agreement for Vanetik to provide a VIP inauguration ticket package for $200,000. Tr. 1 55:14 – 58:14; see also Tr. III 18:11 – 19:21. Mr. Fuks also confirmed that he never saw the purported "second agreement" (Ex. 10) and did not sign that document. Tr. 1 56:18 – 57:20.

Further, Defendant is claiming work he allegedly did for Gennady Kernes under a purported contract with Fuks started around April 2016, lasted for four months, and included a feasibly study pursuant to paragraph 1.2 of the contract, but the purported contract is dated September 21, 2016. See Ex. 10 at p.1. It also provides for an initial retainer of $250,000 plus an additional $50,000 a month (see id. § 1.3), but Vanetik produced just one invoice, which is dated November 19, 2016 and is for $200,000 (Ex. 2), or the amount for two VIP inauguration tickets at the $100,000 price per person quoted by Vanetik to Fuks (see Ex. 1., p.22). And while the email from Vanetik with the invoice from his yuri@vanetik.com account is in evidence (Ex. 2), there is no email nor any other communication showing that the alleged Odyssey contract was sent to Fuks or to anyone else.

DEF.'S PROPOSED FINDING #8      Odyssey stopped working on the project after it became less of a priority for the mayor and Fuks was not accessible and no payments were not made. Eventually, a company called BEM Global paid Odyssey $200,000 as a partial payment for the consulting work.

OBJECTIONS TO PROPOSED FINDING OF FACT #8

Plaintiff objects to Defendant's proposed finding of fact #8 as it is incorrect and contrary to the credible evidence offered at trial.

DEF.'S PROPOSED FINDING #9      Vanetik emailed the invoice for $200,000 on November 21, 2016. The invoice was for work that Odyssey had

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

performed on the Kernes human rights project. Odyssey did no other work for the Kernes human rights project after it received payment because Fuks indicated it was no longer a priority, and further payments for work performed were unlikely.

OBJECTIONS TO PROPOSED FINDING OF FACT #9

Plaintiff objects to Defendant's proposed finding of fact #9 as it incorrect and is contrary to the credible evidence offered at trial.

Fuks confirmed that he did not engage Odyssey or Vanetik for any human rights project or any other project relating to Gennady Kernes. Tr. III 18:11 – 19:21. Fuks also confirmed that he had never entered into any agreements with Odyssey Management, nor any agreements with Vanetik other than the agreement for Vanetik to provide a VIP inauguration ticket package for $200,000. Tr. 1 55:14 – 58:14; see also Tr. III 18:11 – 19:21. Fuks further confirmed that he never saw the purported "second agreement" (Ex. 10) and did not sign that document. Tr. 1 56:18 – 57:20.

Further, Defendant is claiming work he allegedly did for Gennady Kernes under a purported contract with Fuks started around April 2016, lasted for four months, and included a feasibly study pursuant to paragraph 1.2 of the contract, but the purported contract is dated September 21, 2016. See Ex. 10 at p.1. It also provides for an initial retainer of $250,000 plus an additional $50,000 a month (see id. § 1.3), but Vanetik produced just one invoice, which is dated November 19, 2016 and is for $200,000 (Ex. 2), or the amount for two VIP inauguration tickets at the $100,000 price per person quoted by Vanetik to Fuks (see Ex. 1., p.22). And while the email from Vanetik with the invoice from his yuri@vanetik.com account is in evidence (Ex. 2), there is no email nor any other communication showing that the alleged Odyssey contract was sent to Fuks or to anyone else.

DEF.'S PROPOSED FINDING #10    In late November 2016, Fuks contacted Vanetik and asked him about the U.S. presidential inauguration for President Trump. Fuks indicated he had friends that he wanted to attend VIP events during the inaugural week.

OBJECTIONS TO PROPOSED FINDING OF FACT #10

Plaintiff objects to Defendant's proposed finding of fact #10 as it is inaccurate and is contrary to the credible evidence offered at trial. See Ex. 1 at p.22

16.11.16, 22:28:32: Yura USA Vanetik: Pavel - I am in London and Paris 9 to 14 December.    Some of my close friends received major appointments... interesting times ....
16.11.16, 23:44:29: PF: Hi, we definitely have to see each other. Maybe we can get to Trump at the inauguration
16.11.16, 23:46:39: Yura USA Vanetik: Yes.  The question is in what capacity.
16.11.16, 23:47:52: PF: As a guest, I want to come with Vitalik and my wives
16.11.16, 23:50:11: Yura USA Vanetik: Let's chat then and I will explain a few things. It is January 20th. Time to book everything is now. I probably will not be there, as I have a congressional delegation to Cuba 18 to 24th with Gen Next.
16.11.16, 23:50:49: Yura USA Vanetik: There are guests that get tickets and guests that get VIP treatment. Regular attendance is a joke.
17.11.16, 0:33:23: Yura USA Vanetik: I will explain when we talk.
17.11.16, 0:51:44: PF: OK

DEF.'S PROPOSED FINDING #11    At trial, Vanetik disputed the whatsapp texts offered by Fuks into evidence because it was not the complete and accurate record of their communications. At trial, Fuks testified that Vanetik sent him a lot of photographs. However, no photographs were contained in Ex. 1.

OBJECTIONS TO PROPOSED FINDING OF FACT #11.

Plaintiff objects to Defendant's proposed finding of fact #11 as it is not a proposed finding of fact, and because the assertions made by Vanetik about the WhatsApp messages in Exhibit 1 are inaccurate.

Fuks saved the WhatsApp text messages that he and Vanetik exchanged with each other. Tr. I 16:9 – 19:5, 20:12 – 21:19, 23:23 – 29:20; Ex. 1; see also Tr. III 20:3 - 15. Using the WhatsApp Messenger export function, Fuks exported all of the WhatsApp messages he and Vanetik exchanged with each other during the period from March 18, 2016 through May 10, 2017 into a text data file. Tr. I 16:9 – 19:5, 20:12 – 21:19, 23:23 – 29:20; Ex. 1; see also Tr. III 20:3 – 15. A print-out of that text data file along with an English translation was admitted into evidence as

*Id.* The file shows that Vanetik and Fuks sent each other pictures (<u>see</u>, <u>e.g.</u>, Ex. 1 at 22 ("12.11.16, 3:37:44: Yura USA Vanetik: 2016-11-12-PHOTO-00000243.jpg <attachment>", but because the export function provides just a text data file, only the text appears in Exhibit 1.

DEF.'S PROPOSED FINDING #12   Vanetik agreed to assist and provide a private program for Fuks' friend and his wife. Vanetik indicated that Fuks had to start paying the outstanding Odyssey bill. Fuks informed Vanetik that he would pay $200,000 on the Odyssey bill.

<u>OBJECTIONS TO PROPOSED FINDING OF FACT #12</u>

Plaintiff objects to Defendant's proposed finding of fact #12 as it is inaccurate and is contrary to the credible evidence offered at trial. <u>See</u>, <u>e.g.</u>, Ex. 1 at p.22-23.

DEF.'S PROPOSED FINDING #13   BEM Global Corporation wired the $200,000 to Odyssey Management LLC. The money was not wired to Vanetik.

<u>OBJECTIONS TO PROPOSED FINDING OF FACT #13</u>

Plaintiff objects to Defendant's proposed finding of fact #12 as it is incomplete and therefore misleading and inaccurate, and is contrary to the credible evidence offered at trial. <u>See</u> Plaintiff's Proposed Findings of Fact ¶¶ 8-20.

DEF.'S PROPOSED FINDING #14   Odyssey made a payment of $40,000 to the Keelen Group and $25,000 to Medowood Management, LLC to assist in the scheduling for the inauguration for Fuks' friends, and ultimately also Fuks who indicated that he would also be coming to Washington. Vanetik is not presently a principal in either Keelen Group, nor Medowood Management LLC.

<u>OBJECTIONS TO PROPOSED FINDING OF FACT #14</u>

Plaintiff objects to Defendant's proposed finding of fact #14 as it is immaterial to the claims and defenses in this case and is not supported by the credible evidence offered at trial. There is no documentary evidence that Odyssey or Vanetik made any payments to anyone, other than Vanetik using his credit card to pay the $7,500 cost of three non-VIP tickets to the Black Tie & Boots event hosted by the Texas State Society, which was not one of the events in the promised VIP inauguration event ticket package for which Fuks paid Vanetik $200,000. See Plaintiff's Proposed Finding of Fact 24.

<u>DEF.'S PROPOSED FINDING #15</u>   Matt Keelen of the Keelen Group suggested Fuks and his friends attend viewing of the inauguration at the Carpenter's Union, which is on the fifth or sixth floor in a midrise that overlooked the inauguration ceremony. Vanetik confirmed and Odyssey paid for the tickets to the event. Fuks and his friends (Ukrainian politician and Billionaire Vitalyi Khomutynnik and his wife Svitlana) attended the event. Vanetik considered the gathering a VIP event. Fuks could not remember the name of the bar he claimed he viewed the inaugural from. He also could not remember the name of the hotel he stay at during the 2 night trip, although he claimed he spent $20,000 for the hotel and food.

<u>OBJECTIONS TO PROPOSED FINDING OF FACT #15</u>

Plaintiff objects to Defendant's proposed finding of fact #15 as it contains assertions that are immaterial to the claims and defenses in this case, are inaccurate, and are contrary to the credible evidence offered at trial.

<u>DEF.'S PROPOSED FINDING #16</u>   Fuks eventually expressed his displeasure to Vanetik about attending the events at the Carpenter's Union and the Texas Ball. Fuks complained to Vanetik that the U.S. President was not at the

Texas Ball. Thereafter, Fuks threatened Vanetik's life. Previously, Vanetik explained to Fuks the rules governing official inaugural events and limitations of attending various inaugural parties that Fuks and the Khomutynniks could participate in as foreigners.

OBJECTIONS TO PROPOSED FINDING OF FACT #16

Plaintiff objects to Defendant's proposed finding of fact #16 as it contains assertions that are immaterial to the claims and defenses in this case, are inaccurate, and are contrary to the credible evidence offered at trial.  See, e.g., Tr. II 18:21 - 20:19.

DEF.'S PROPOSED FINDING #17    Besides the above, Vanetik also called Representative Kevin McCarthy and Ed Royce's office to create a private program for Fuks and his friends. Vanetik eventually invited Fuks and his friends to a party where Chairman of the Foreign Affair Committee in Congress, Ed Royce and Leader Kevin McCarthy were in attendance. Vanetik introduced Fuks' friend and Fuks to Representatives Royce and McCarthy, as well as Senator Corey Gardener during the inaugural events that Fuks and the Khomutynniks attended.

OBJECTIONS TO PROPOSED FINDING OF FACT #17

Plaintiff objects to Defendant's proposed finding of fact #17 as it contains assertions that are immaterial to the claims and defenses in this case, are inaccurate, and are contrary to the credible evidence offered at trial. Fuks declined Vanetik's attempts to sell him access to events other than the events that were part of the VIP inauguration ticket package that Fuks had purchased, i.e., Cabinet Dinner – 2 tickets, Victory Reception – 4 tickets, Inaugural Concert and Fireworks – 4 tickets, Parade – 4 VIP Tickets, Inaugural Ball Premier Access – 2 tickets, and the Presidential Swearing-In Ceremony – 2 tickets.

DEF.'S PROPOSED FINDING #18    The next morning Fuks' friend texted Vanetik "thank you", while Fuks simply texted "we are gone". Fuks' friends never expressed any dissatisfaction with the program to Vanetik. Vanetik attended two events with Fuks and his friends. The first was at the Carpenter's office and the second one was Leader McCarthy's event. Vanetik believed that Fuks and his friends were pleased with the events because he introduced them to Representatives McCarthy and Royce and availed them of a unique opportunity to view the inaugural program rather than stand in the rain in a crowd. Fuks and Khomutynniks only came for 1 day and missed many of the events that comprised the private inaugural program that Vanetik and his team put together for Fuks' final approval – a program that Fuks never objected to.

OBJECTIONS TO PROPOSED FINDING OF FACT #18

Plaintiff objects to Defendant's proposed finding of fact #18 as it contains assertions that are immaterial to the claims and defenses in this case, are inaccurate, and are contrary to the credible evidence offered at trial.

DEF.'S PROPOSED FINDING #19    Eric Rogers attended one event where Mr. Fuks was present. He questioned Mr. Fuks attendance, since he had a large outstanding invoice with Odyssey.

OBJECTIONS TO PROPOSED FINDING OF FACT #19

Plaintiff objects to Defendant's proposed finding of fact #19 as it is immaterial to the claims and defenses in this case, and not supported by the credible evidence offered at trial.

DEF.'S PROPOSED FINDING #20    Vanetik did not receive any compensation from Fuks or any third parties related to the services he provided Fuks and his friends for the inauguration events.

OBJECTIONS TO PROPOSED FINDING OF FACT #20

- 15 -
OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

Plaintiff objects to Defendant's proposed finding of fact #20 as it is immaterial to the claims and defenses in this case, inaccurate, and not supported by the credible evidence offered at trial.

DEF.'S PROPOSED FINDING #21    Prior to Fuks arrival, Vanetik emailed Fuks an outline of the events Fuks' friends were scheduled to attend. Vanetik spoke to Fuks after he emailed the program and Fuks did not object to anything. The program was supposed to start January 14th or 15th, 2017 and end 21st, 2017.

OBJECTIONS TO PROPOSED FINDING OF FACT #21

Plaintiff objects to Defendant's proposed finding of fact #21 as it is inaccurate and contrary to the credible evidence offered at trial.

On November 16, 2016, Vanetik, discussing the inauguration, represented to Fuks that: "There are guests that get tickets and guests that get VIP treatment. Regular attendance is a joke." Ex. 1 at p.22. Two days later, in response to Fuks asking "How much do they cost. I'm ready to buy the very best," Vanetik represented that "Best VIP 100k per person. 3 days includes top briefings tickets to inaugural ball, etc. photo opps most likely. There are levels below that as well." Ex. 1 at p.22. Later in November, Vanetik told Fuks that "Everything is done. I now have what seems to be the final layout." Ex. 1 at p.23. Vanetik then represented to Fuks that the package Fuks had purchased included the following:

Cabinet Dinner – 2 tickets

Victory Reception – 4 tickets

Inaugural Concert and Fireworks – 4 tickets

Parade – 4 VIP Tickets

Inaugural Ball Premier Access – 2 tickets

Presidential Swearing-In Ceremony – 2 tickets

Vanetik confirmed: "This is the VIP package that we bought." Ex. 1 at p.23.

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

In early January, Vanetik tried to persuade Fuks to buy tickets to additional events, including a January 20th breakfast at $25,000 per person, an event with Ed Royce on January 17th for $20,000 per person, and events held by the New York GOP on January 18th and 19th at $35,000 per person. Vanetik also told Fuks that he would have to pay $350,000 more to have a chance to meet up with president-elect Trump. Fuks was not interested in and passed on these other events and the purported opportunity to meet with president-elect Trump. See, e.g., Tr. II 7:21 – 8:1.

Fuks repeatedly asked that Vanetik provided the schedule for the events in the VIP package that Fuks had purchased—i.e., the Cabinet Dinner, the Victory Reception, the Inaugural Concert and Fireworks, the Parade, the Inaugural Ball Premier Access, and the Presidential Swearing-In Ceremony—but Vanetik kept stalling. Fuks asked again on the morning of January 17th:

> 15.01.17, 20:30:57: Yura USA Vanetik: Hi pavel. I should have final schedule sent to me today. Will forward it to you. I will be leaving for DC tomorrow.
> 16.01.17, 20:20:58: Yura USA Vanetik: <missing video>
> 17.01.17, 7:39:35: PF: Hi, send us the schedule of all events.
> 17.01.17, 7:47:48: Yura USA Vanetik: Hey Pavel. I just arrived to DC. I am waiting for a revised one. There is a problem with the dinner. Trying to fix it... should have it in am. What time are you flying in?
> 17.01.17, 7:55:09: PF: We land on 01.19 at 1:00 p.m.
> 17.01.17, 16:40:17: Yura USA Vanetik: Good. There is an awesome event - red carpet that night. 7pm. I will send you schedule in about an hour or so. We got fucked on the dinner. I am working on fixing it. I hate this Inauguration. It is nothing but headaches.
>
> It would be better if you came tomorrow or today.

Ex. 1 at 27. Vanetik did not send anything further concerning the schedule until the evening of the 17th. Despite Fuks having no interest in the additional events that Vanetik tried to sell him in January, Vanetik included those events on the schedule he sent Fuks. See Ex. 9. Nevertheless, there was no reason for Fuks to object to the schedule, as the events he had understood he had purchased tickets to, including the Inaugural Concert and Fireworks, the Parade, the Inaugural Ball Premier Access, and the Presidential Swearing-In Ceremony, appeared to be listed. Ex. 1 at

27; see also Tr. II 18:21 - 20:19. But Vanetik ultimately failed to provide Fuks with the tickets for these events.

There are no events listed for January 14th and 15th on the schedule that Vanetik provided, and the events listed on January 21 were not part of the VIP inauguration package that Fuks had purchased.

DEF.'S PROPOSED FINDING #22    Fuks and his friends did not arrive until evening January 19, 2021. Fuks did not explain to Vanetik why he arrived late.

OBJECTIONS TO PROPOSED FINDING OF FACT #22

Plaintiff objects to Defendant's proposed finding of fact #22 as it is inaccurate. Fuks arrived in Washington DC in the early afternoon of January 19, 2017, just as Fuks had previously told Vanetik (Ex. 1 at p.27).

DEF.'S PROPOSED FINDING #23    Fuks and his friends stayed in Washington, D.C. from evening of January 19, 2017 and departed in the morning of January 21, 2017. Fuks and his friends departed early to fly to Aspen to go skiing. When they left, there were still other events on the schedule for Fuks and his friends to attend.

OBJECTIONS TO PROPOSED FINDING OF FACT #23

Plaintiff objects to Defendant's proposed finding of fact #23 as it is immaterial to the claims and defenses in this case and because it is inaccurate and contrary to the credible evidence offered at trial. Fuks arrived in Washington DC in the early afternoon of January 19, 2017.  Fuks did not depart early; there were no events in the VIP inauguration ticket package that Fuks purchased scheduled after January 20, 2017.

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

DEF.'S PROPOSED FINDING #24    Vanetik next spoke to Fuks at the end of January 2017. Fuks made all sorts of threats to Vanetik in their communications. Fuks threatened Vanetik on two occasions by saying he would blow him up and shoot him in the face.

OBJECTIONS TO PROPOSED FINDING OF FACT #24

Plaintiff objects to Defendant's proposed finding of fact #24 as it is immaterial to the claims and defenses in this case, it is inaccurate, and it is not supported by the credible evidence offered at trial. See, e.g., Ex. 1 at p.28-29; see also Tr. II 14:11 – 15:3, 17:24 – 18:4.

DEF.'S PROPOSED FINDING #25    Fuks later accused Vanetik of getting his United States Visa cancelled. There was no evidence that Vanetik ever did anything to cancel Fuks' visa.

OBJECTIONS TO PROPOSED FINDING OF FACT #25

Plaintiff objects to Defendant's proposed finding of fact #25 as it is immaterial to the claims and defenses in this case and because the second sentence is inaccurate.

DEF.'S PROPOSED FINDING #26    In February 2017, Vanetik contacted the FBI regarding Fuks' many threats and turned his phone over to them because of Fuks' threats. Vanetik does not know what the FBI did to his phone. Vanetik believed (and continues to believe) Fuks' threats were real. The FBI returned the phone to Vanetik about two weeks later. When he received it back, he could not access Signal or other apps.

OBJECTIONS TO PROPOSED FINDING OF FACT # 26

Plaintiff objects to Defendant's proposed finding of fact #26 as it is immaterial to the claims and defenses in this case and is not supported by the credible evidence offered at trial.

DEF.'S PROPOSED FINDING #27    Approximately, two years ago, Fuks spoke with Sayhan Agaev via video conference. The purpose of his call was to attempt to resolve the dispute between Vanetik and Fuks.

OBJECTIONS TO PROPOSED FINDING OF FACT #27

Plaintiff objects to Defendant's proposed finding of fact #27 as it is immaterial to the claims and defenses in this case, it is inaccurate, and it is not supported by the credible evidence offered at trial.

Fuks testified that he has never had any conversations or video conferences with Agaev, and that Agaev's appearance at the trial was the first time he had ever even seen Agaev. Tr. III 8:3-10.

In addition, Defendant failed to properly disclose Agaev as a witness as Defendant disclosed him as "Sayhan", but Agaev testified that his actual name is "Khuseyn". See Tr. III 5:5 – 10:3. This combined with Defendant's failure to provide any contact information for Agaev prevented from giving Plaintiff a reasonable opportunity to investigate the witness. See id.

Further, Mr. Agaev claimed to be a German resident, but was testifying by mobile phone with unreliable service from the backseat of a dimly lit car somewhere in Moscow, Russia. See Tr. III 5:5 – 10:3.

DEF.'S PROPOSED FINDING #28    In the first video call, Fuks did not inform him that Vanetik owed him any money. He did say that Vanetik was responsible for his visa issue, and that if Vanetik did not fix the problem he would "do him in". Mr. Agaev understood that as a threat against Vanetik's life.

OBJECTIONS TO PROPOSED FINDING OF FACT #28

Plaintiff objects to Defendant's proposed finding of fact #28 as it is immaterial to the claims and defenses in this case, it is inaccurate, and it is not supported by the credible evidence offered at trial.

First, Fuks testified that does not know Agaev and has never had any conversations or video conferences with Agaev, and that Agaev's appearance at the trial was the first time he had ever even seen Agaev. T. II 15:4-10; Tr. III 8:3-10.

Second, Agaev did not testify that the alleged threat was "against Vanetik's life." See Tr. III 14:13-15.

Third, Defendant failed to properly disclose Agaev as a witness as Defendant disclosed him as "Sayhan", but Agaev testified that his actual name is "Khuseyn". See Tr. III 5:5 – 10:3. This combined with Defendant's failure to provide any contact information for Agaev prevented from giving Plaintiff a reasonable opportunity to investigate the witness. See id.

Fourth, Agaev claimed to be a German resident, but was bizarrely testifying by mobile phone with unreliable service from the backseat of a dimly lit car somewhere in Moscow, Russia. See Tr. III 5:5 – 10:3.

DEF.'S PROPOSED FINDING #29    Mr. Agaev spoke to Fuks one month later and Fuks repeated his threat concerning murdering Vanetik. Once again the conversation was a video call, so Mr. Agaev was certain he was speaking with Fuks.

OBJECTIONS TO PROPOSED FINDING OF FACT #29

Plaintiff objects to Defendant's proposed finding of fact #29 as it is immaterial to the claims and defenses in this case, it is inaccurate, and it is not supported by the credible evidence offered at trial.

First, Fuks testified that does not know Agaev and has never had any conversations or video conferences with Agaev, and that Agaev's appearance at the trial was the first time he had ever even seen Agaev. T. II 15:4-10; Tr. III 8:3-10.

Second, Agaev did not testify that anyone said anything about "murdering Vanetik." <u>See</u> Tr. III 14:13-15.

Third, Defendant failed to properly disclose Agaev as a witness as Defendant disclosed him as "Sayhan", but Agaev testified that his actual name is "Khuseyn". <u>See</u> Tr. III 5:5 – 10:3. This combined with Defendant's failure to provide any contact information for Agaev prevented from giving Plaintiff a reasonable opportunity to investigate the witness. <u>See</u> <u>id</u>.

Fourth, Agaev claimed to be a German resident, but was bizarrely testifying by mobile phone with unreliable service from the backseat of a dimly lit car somewhere in Moscow, Russia. <u>See</u> Tr. III 5:5 – 10:3.

<u>DEF.'S PROPOSED FINDING #30</u>   Fuks testified at trial that Ukrainian government had recently imposed sanctions on him. He also testified that Russia had at one time issued a warrant for his arrest.

<u>OBJECTIONS TO PROPOSED FINDING OF FACT #30</u>

Plaintiff objects to Defendant's proposed finding of fact #30 as it is immaterial to the claims and defenses in this case, and because it is misleading as it lacks context. <u>See</u>. <u>e.g.</u>, Tr. II 15:15 – 16:3 ("**Q.** And isn't it also accurate that Russia has an arrest warrant out for you?  **A.** No. The Court revoked it.  **Q.** At one time there was?  **A.** At a certain moment, yes. It did exist. There was a moment when I was on the list in 2018 of 100 top Ukraine businessman and politicians, and the Russian government sanctioned all of them, and they also dug up two old criminal cases and tried to prosecute me, but the Court demonstrated that it was all fake. I ended up on the same list with all the members of the Ukrainian government with the Prime Minister, with the internal security people, all the people in the government. So, for me it was actually an honor."

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

1    <u>DEF.'S PROPOSED FINDING #31</u>     Fuks filed the instant lawsuit

2    approximately 2.5 years after the alleged incident.

3    <u>OBJECTIONS TO PROPOSED FINDING OF FACT #31</u>

4    Plaintiff objects to Defendant's proposed finding of fact #31 as it is

5    immaterial to the claims and defenses in this case and because it is vague and

6    ambiguous with respect to "the alleged incident."

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

# OBJECTIONS TO DEFENDANT'S PROPOSED CONCLUSIONS OF LAW

## A. <u>Jurisdiction.</u>

<u>DEF.'S PROPOSED CONCLUSION #32</u>     Jurisdiction is based on diversity of citizenship. 28 U.S.C. §1332. Plaintiff Pavel Fuks is a citizen of Ukraine. The amount in controversy exceeds $75,000.

<u>OBJECTION TO DEF'S. PROPOSED CONCLUSION OF LAW #32</u>

Plaintiff objects to Defendant's proposed conclusion of law #32 as written because it does not specify that it is the jurisdiction over the subject matter of this action that is based on diversity of citizenship and because it is incomplete as it references the citizenship of Plaintiff but not Defendant.

<u>DEF.'S PROPOSED CONCLUSION #33</u>     After the close of evidence, Fuks dismissed his sixth cause of action for Violation of California Business and Professional Code. Five causes of action remained in his complaint against Vanetik.

<u>OBJECTION TO DEF'S. PROPOSED CONCLUSION OF LAW #33</u>

Plaintiff objects to Defendant's proposed conclusion of law #33 because it is not a conclusion of law.

<u>DEF.'S PROPOSED CONCLUSION #34</u>     Fuks' claim for promissory fraud is based on his assertion that Vanetik promised to obtain a VIP package to the presidential inauguration, and then failed to perform as promised.

<u>OBJECTION TO DEF'S. PROPOSED CONCLUSION OF LAW #34</u>

Plaintiff objects to Defendant's proposed conclusion of law #34 because it is not a conclusion of law and it is an incomplete and inaccurate description of Fuks's claim for promissory fraud.

Plaintiff's claim for promissory fraud is that (1) Vanetik promised Fuks that he would obtain for Fuks a VIP ticket package for the 2017 U.S. presidential

inauguration; (2) at the time Vanetik made the promise, he had no intention of performing it; (3) Vanetik made the promise with the intention to induce Fuks to pay Vanetik the sum of $200,000; (4) Fuks relied on Vanetik's promise and accordingly paid to Vanetik the sum of $200,000; (5) Vanetik failed to perform as promised—instead of delivering any of the promised VIP event tickets, Vanetik provided Fuks with three non-VIP tickets to a Texas State Society event for which Vanetik paid just $7,500; (6) Vanetik's failure to perform caused Fuks damages in the amount of the $200,000 that Fuks had sent to Vanetik for VIP inauguration event tickets that he never received; and (7) accordingly, Defendant Vanetik is liable to Fuks for promissory fraud and, and Fuks is entitled to $200,000 in damages from Vanetik. See Plaintiff's Proposed Conclusions of Law ¶¶ 4-11; see also Tr. II 18:21 - 20:19.

DEF.'S PROPOSED CONCLUSION #35     Fuks claims that based on Vanetik's promise, BEM Global Corp. wired $200,000 to Odyssey Management LLC. Fuks offered no evidence to pierce the corporate veil of the company.

OBJECTION TO DEF'S. PROPOSED CONCLUSION OF LAW #35

Plaintiff objects to Defendant's proposed conclusion of law #35 as it is not a conclusion of law, and is an inaccurate and incomplete description of Fuks's claim for promissory estoppel. Plaintiff objects to the second sentence of Defendant's proposed conclusion of law #35 because the reference to "the company" is vague and ambiguous, and because it is immaterial.  Plaintiff Fuks alleged and demonstrated at trial that Fuks relied on Vanetik's promises about a VIP inauguration package when Fuks paid $200,000 to Vanetik for two VIP inauguration ticket packages.  That Fuks had the $200,000 in funds wired from an account for one of his companies to Vanetik at a bank account Vanetik specified does not transform a claim from Fuks against Vanetik to a claim from Fuks's company against Vanetik's company.

1

2     <u>DEF.'S PROPOSED CONCLUSION #36</u>    The evidence also showed that

3 Odyssey Management LLC was owned by three individuals. The evidence further

4 showed that Vanetik emailed a schedule of the events to Fuks. Fuks did not object

5 to the events scheduled.

6     <u>OBJECTION TO DEF'S. PROPOSED CONCLUSION OF LAW #36</u>

7     Plaintiff objects to Defendant's proposed conclusion of law #36 because it is

8 not a conclusion of law, but rather a mix of unrelated alleged facts, and because it

9 is not supported by the credible evidence presented at trial.

10

11     <u>DEF.'S PROPOSED CONCLUSION #37</u>    Because Vanetik did not make

12 any false promises to Fuks, Fuks is not entitled to damages under this claim.

13     <u>OBJECTION TO DEF'S. PROPOSED CONCLUSION OF LAW #37</u>

14     Plaintiff objects to Defendant's proposed conclusion of law #37 because it is

15 an invalid and inaccurate conclusion based on the credible evidence at trial. As set

16 forth in Plaintiff's proposed findings of fact and conclusions of law, the credible

17 evidence at trial established each element of Plaintiff's claim for promissory fraud.

18 <u>See</u> Plaintiff's Proposed Conclusions of Law ¶¶ 4-11; <u>see also</u> Tr. II 18:21 - 20:19.

19

20     <u>DEF.'S PROPOSED CONCLUSION #38</u>    Fuks claim for intentional

21 misrepresentation is based on his allegation that Vanetik made false and

22 misleading statements to him regarding Vanetik's ability to obtain a VIP package

23 for him to the 2017 presidential inauguration. Fuks claims that he relied on

24 Vanetik's statements and suffered damages.

25     <u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #38</u>

26     Plaintiff objects to Defendant's proposed conclusion of law #38 as it is not a

27 conclusion of law, and is an inaccurate and incomplete description of Fuks's claim

28 for intentional misrepresentation. Fuks' claim for intentional misrepresentation is

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

that: (1) Vanetik falsely represented to Fuks that Fuks could buy the "Best VIP" tickets to 2017 presidential inauguration events for $100,000 per person; (2) Vanetik, as he admitted at trial, knew that Fuks, as a foreign national, could not buy VIP tickets to the top inauguration events; (3) Vanetik made the misrepresentation to induce Fuks to send at least $200,000 to Vanetik; (4) Fuks relied on Vanetik's false representations and sent Vanetik $200,000 to an account specified by Vanetik, believing that Vanetik would provide him with the best VIP ticket package for U.S. presidential inauguration events; (5) Fuks justifiably relied on the false representations made by Vanetik, an American claiming to be politically connected, including by having "close friends" who received major appointments in the Trump administration; (6) Fuks' justifiable reliance on Vanetik's false representations caused Fuks damages in the amount of the $200,000 he sent to Vanetik for the VIP inauguration event tickets that he never received; and (7) accordingly, Defendant Vanetik is liable to Fuks for intentional misrepresentation, and Fuks is entitled to $200,000 in damages from Vanetik. <u>See</u> Plaintiff's Proposed Conclusions of Law ¶¶ 12-18; <u>see also</u> Tr. II 18:21 - 20:19

<u>DEF.'S PROPOSED CONCLUSION #39</u>     The evidence showed that the $200,000 wire was not from Fuks to Vanetik. Rather, BEM Global Corp. wired the funds to Odyssey Management LLC.

<u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #39</u>

Plaintiff objects to Defendant's proposed conclusion of law #39 as it is not a conclusion of law, is inaccurate, and is immaterial. The credible evidence at trial showed that Vanetik requested that the $200,000 that Fuks was paying to Vanetik for a VIP inauguration ticket package be wired to a bank account specified by Vanetik.

1     <u>DEF.'S PROPOSED CONCLUSION #40</u>    The evidence also showed that

2 Fuks had entered into a consulting agreement with Odyssey Management LLC

3     <u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #40</u>

4     Plaintiff objects to Defendant's proposed conclusion of law #40 as it is not a

5 conclusion of law, and the assertion that Fuks entered into a consulting agreement

6 with Odyssey Management LLC is not supported by the credible evidence offered

7 at trial.

8

9     <u>DEF.'S PROPOSED CONCLUSION #41</u>    Moreover, Vanetik made Fuks

10 aware of the program that was going to be provided. Fuks did not object when

11 informed of the proposed program.

12     <u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #41</u>

13     Plaintiff objects to Defendant's proposed conclusion of law #41 as it is not a

14 conclusion of law, and the assertions therein are vague and ambiguous. On

15 November 16, 2016, Vanetik, discussing the inauguration, represented to Fuks

16 that: "There are guests that get tickets and guests that get VIP treatment. Regular

17 attendance is a joke." Ex. 1 at p.22. Two days later, in response to Fuks asking

18 "How much do they cost. I'm ready to buy the very best," Vanetik represented that

19 "Best VIP 100k per person. 3 days includes top briefings tickets to inaugural ball,

20 etc. photo opps most likely. There are levels below that as well." Ex. 1 at p.22.

21 Later in November, Vanetik told Fuks that "Everything is done. I now have what

22 seems to be the final layout." Ex. 1 at p.23. Vanetik then represented to Fuks that

23 the package Fuks had purchased included the following:

24         Cabinet Dinner – 2 tickets

25         Victory Reception – 4 tickets

26         Inaugural Concert and Fireworks – 4 tickets

27         Parade – 4 VIP Tickets

28         Inaugural Ball Premier Access – 2 tickets

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

Presidential Swearing-In Ceremony – 2 tickets

Vanetik confirmed: "This is the VIP package that we bought." Ex. 1 at p.23.

In early January, Vanetik tried to persuade Fuks to buy tickets to additional events, including a January 20th breakfast at $25,000 per person, an event with Ed Royce on January 17th for $20,000 per person, and events held by the New York GOP on January 18th and 19th at $35,000 per person. Vanetik also told Fuks that he would have to pay $350,000 more to have a chance to meet up with president-elect Trump. Fuks was not interested in and passed on these other events and the purported opportunity to meet with president-elect Trump.

Fuks repeatedly asked that Vanetik provided the schedule for the events in the VIP package that Fuks had purchased—i.e., the Cabinet Dinner, the Victory Reception, the Inaugural Concert and Fireworks, the Parade, the Inaugural Ball Premier Access, and the Presidential Swearing-In Ceremony—but Vanetik kept stalling. Fuks asked again on the morning of January 17th:

15.01.17, 20:30:57: Yura USA Vanetik: Hi pavel. I should have final schedule sent to me today. Will forward it to you. I will be leaving for DC tomorrow.
16.01.17, 20:20:58: Yura USA Vanetik: <missing video>
17.01.17, 7:39:35: PF: Hi, send us the schedule of all events.
17.01.17, 7:47:48: Yura USA Vanetik: Hey Pavel. I just arrived to DC. I am waiting for a revised one. There is a problem with the dinner. Trying to fix it... should have it in am. What time are you flying in?
17.01.17, 7:55:09: PF: We land on 01.19 at 1:00 p.m.
17.01.17, 16:40:17: Yura USA Vanetik: Good. There is an awesome event - red carpet that night. 7pm. I will send you schedule in about an hour or so. We got fucked on the dinner. I am working on fixing it. I hate this Inauguration. It is nothing but headaches.

It would be better if you came tomorrow or today.

Ex. 1 at 27. Vanetik did not send anything further concerning the schedule until the evening of the 17th. Despite Fuks having no interest in the additional events that Vanetik tried to sell him in January, Vanetik included those events on the schedule he sent Fuks. See Ex. 9. Nevertheless, there was no reason for Fuks to object to the schedule, as the events he had understood he had purchased tickets to, including the Inaugural Concert and Fireworks, the Parade, the Inaugural Ball Premier

Access, and the Presidential Swearing-In Ceremony, appeared to be listed. Ex. 1 at 27.  But Vanetik ultimately failed to provide Fuks with the tickets for these events.

DEF.'S PROPOSED CONCLUSION #42     Because Vanetik did not make any intentional misrepresentations to him, Fuks is not entitle to damages under this claim.

OBJECTIONS TO PROPOSED CONCLUSION OF LAW #42

Plaintiff objects to Defendant's proposed conclusion of law #42 because it is an invalid and inaccurate conclusion based on the credible evidence at trial. As set forth in Plaintiff's proposed findings of fact and conclusions of law, the credible evidence at trial established each element of Plaintiff's claim for intentional misrepresentation.

DEF.'S PROPOSED CONCLUSION #43     Fuks' claim for breach of contract is premised on the allegation that he and Vanetik entered into contract where Fuks paid Vanetik $200,000 and Vanetik failed to deliver to Fuks the promised benefits.

OBJECTIONS TO PROPOSED CONCLUSION OF LAW #43

Plaintiff objects to Defendant's proposed conclusion of law #43 as it is not a conclusion of law, but an incomplete and inaccurate characterization of Fuks' claim for breach of contract. Plaintiff's breach of contract claim is that, (1) as evidenced by a series of text messages exchanged between Fuks and Vanetik, the two entered into a written agreement through which Vanetik would provide Fuks with a pair of VIP treatment packages for the 2017 United States presidential inauguration in exchange for Fuks paying Vanetik $200,000; (2) Fuks performed his obligation under the contract by having a $200,000 payment wired to a bank account to which Vanetik had instructed Fuks to send the payment; (3) Vanetik breached the parties' agreement by not providing the VIP inauguration event ticket

- 30 -
OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

package; (4) Vanetik's breach caused Fuks damages in the amount of the $200,000 he paid to Vanetik for the VIP inauguration package; and (5) accordingly, Defendant Vanetik is liable to Fuks for breach of contract, and Fuks is entitled to $200,000 in damages from Vanetik. <u>See</u> Plaintiff's Proposed Conclusions of Law ¶¶ 19-24.

DEF.'S PROPOSED CONCLUSION #44    At trial, Fuks did not present any evidence that there was a written Agreement signed with Vanetik. In fact, an entity known as BEM Global Corp. wired the $200,000 to Odyssey Management LLC.

OBJECTIONS TO PROPOSED CONCLUSION OF LAW #44

Plaintiff objects to Defendant's proposed conclusion of law #44 as inaccurate and immaterial as the parties' agreement is documented in writing through the text messages exchanged between Fuks and Vanetik.

DEF.'S PROPOSED CONCLUSION #45    Even if an oral agreement ("meeting of the minds") was formed between Vanetik and Fuks, a two year statute of limitation applies.

OBJECTIONS TO PROPOSED CONCLUSION OF LAW #45

Plaintiff objects to Defendant's proposed conclusion of law #45 as inaccurate and immaterial because the agreement at issue is documented in writing through the text messages exchanged between Fuks and Vanetik.

DEF.'S PROPOSED CONCLUSION #46    Testimony at trial indicates the inauguration program took place in January 2017. Fuks did not file his complaint until June 18, 2019.

OBJECTIONS TO PROPOSED CONCLUSION OF LAW #46

Plaintiff objects to Defendant's proposed conclusion of law #46 as it is not a

legal conclusion.

DEF.'S PROPOSED CONCLUSION #47    Therefore, the two year statute of limitations under Code of Civ. Proc. §339 bars this cause of action.

OBJECTIONS TO PROPOSED CONCLUSION OF LAW #47

Plaintiff objects to Defendant's proposed conclusion of law #47 as it is immaterial to the claims and defenses in this case.

DEF.'S PROPOSED CONCLUSION #48    Because Fuks has failed to establish any claim for breach of contract, Fuks is not entitled to any damages under this claim for relief.

OBJECTIONS TO PROPOSED CONCLUSION OF LAW #48

Plaintiff objects to Defendant's proposed conclusion of law #48 as it is immaterial to the claims and defenses in this case.

DEF.'S PROPOSED CONCLUSION #49    Fuks claims that Vanetik converted money belonging to Fuks, when BEM Global Corp. wired $200,000 to Odyssey Management LLC.

OBJECTIONS TO PROPOSED CONCLUSION OF LAW #49

Plaintiff objects to Defendant's proposed conclusion of law #49 as it is not a conclusion of law, it is inaccurate, and it misrepresents Plaintiff's conversion claim. Fuks's claim for conversion is that (1) Fuks sent to Vanetik the specific sum of $200,000 so that Vanetik could obtain for Fuks a pair of VIP inauguration ticket packages from the 2017 U.S. Presidential Inauguration, (2) Vanetik failed to use the $200,000 as authorized when he did not purchase the VIP inauguration ticket packages and provide them to Fuks; (3) Vanetik willfully chose not to retun the $200,000 when, after not receiving the VIP inauguration ticket package, Fuks demanded the funds be returned; and (4) accordingly, Vanetik is liable to Fuks for

- 32 -

conversion of Fuks' $200,000, and Fuks is entitled to $200,000 in damages from Vanetik. <u>See</u> Plaintiff's Proposed Conclusions of Law ¶¶ 25-29.

<u>DEF.'S PROPOSED CONCLUSION #50</u>     The evidence at trial revealed that Odyssey Management LLC was owned by three people. Moreover, Odyssey Management LLC was not a defendant in the action and there was no evidence that Vanetik ever personally received any money or any of the BEM Global Corp. wire to Odyssey Management LLC.

<u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #50</u>

Plaintiff objects to Defendant's proposed conclusion of law #50 as it is immaterial to the claims and defenses in this case. Plaintiff Fuks alleged and demonstrated at trial that Fuks relied on Vanetik's promises about a VIP inauguration package when Fuks paid $200,000 to Vanetik for two VIP inauguration ticket packages, and that Fuks had those funds wired to an account specified by Vanetik.

<u>DEF.'S PROPOSED CONCLUSION #51</u>     In fact, evidence was introduced at trial that the $200,000 wire was for consulting work Odyssey Management did for Mayor Kernes.

<u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #51</u>

Plaintiff objects to Defendant's proposed conclusion of law #51 as it is not a conclusion of law, and it is ultimately immaterial as the referenced "evidence" is not credible.

<u>DEF.'S PROPOSED CONCLUSION #52</u>     Because Fuks has failed to establish any claim for conversion, Fuks is not entitled to any damages under this claim for relief.

<u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #52</u>

Plaintiff objects to Defendant's proposed conclusion of law #52 because it is an invalid and inaccurate conclusion based on the credible evidence at trial. As set forth in Plaintiff's proposed findings of fact and conclusions of law, the credible evidence at trial established each element of Plaintiff's claim against Defendant for conversion. <u>See</u> Plaintiff's Proposed Conclusions of Law ¶¶ 25-29 and Plaintiff's Proposed Finding of Fact ¶¶ 8-31.

<u>DEF.'S PROPOSED CONCLUSION #53</u>     Fuks claims that Vanetik was unjustly enriched when Fuks gave him $200,000 for the purchase of a VIP inaugural package.

<u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #53</u>

Plaintiff objects to Defendant's proposed conclusion of law #53 as it is not a conclusion of law, but an incomplete and thus inaccurate characterization of Fuks' claim for unjust enrichment. Fuks' claim for unjust enrichment (quasi-contract) is that Vanetik was unjustly enriched through fraud or conversion because (1) Vanetik induced Fuks to send him $200,000 to be used for the purchase of two VIP inauguration package for Fuks; (2) Vanetik accepted the $200,000, but never actually purchased for and provided to Fuks the VIP inauguration event tickets; (3) Vanetik refused to return the $200,000; and (4) accordingly, Vanetik is liable to Fuks for restitution in the amount of $200,000, plus interest. <u>See</u> Plaintiff's Proposed Conclusions of Law ¶¶ 30-34.

<u>DEF.'S PROPOSED CONCLUSION #54</u>     The evidence at trial showed that $200,000 was wired from BEM Global Corp. to Odyssey Management LLC. There was no evidence that Vanetik received any of the money from Odyssey Management LLC or anyone else, nor retained it

<u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #54</u>

Plaintiff objects to Defendant's proposed conclusion of law #54 because it is inaccurate, misleading and irrelevant. Fuks paid Vanetik the sum of $200,000 for a VIP inaugural ticket package by having the funds wired from an account for his company BEM Global to a bank account specified by Vanetik. Where Vanetik chose to have the funds sent is irrelevant. Vanetik admitted that no funds were return to Mr. Fuks.

<u>DEF.'S PROPOSED CONCLUSION #55</u>     Moreover, Odyssey Management LLC was not named as a defendant and there was no evidence introduced to pierce the corporate veil.

<u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #55</u>

Plaintiff objects to Defendant's proposed conclusion of law #55 as it is not a conclusion of law, and because it is immaterial.  Plaintiff Fuks alleged and demonstrated at trial that Fuks relied on Vanetik's promises about a VIP inauguration package when Fuks paid $200,000 to Vanetik for two VIP inauguration ticket packages.  That Fuks had the $200,000 in funds wired from an account for one of his companies to Vanetik at a bank account Vanetik specified does not transform a claim from Fuks against Vanetik to a claim from Fuks's company against Vanetik's company.

<u>DEF.'S PROPOSED CONCLUSION #56</u>     The evidence also showed that Odyssey paid two consultants to assist in creating an inauguration program.

<u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #56</u>

Plaintiff objects to Defendant's proposed conclusion of law #56 because it is not a conclusion of law, and is not supported by credible evidence.

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS

<u>DEF.'S PROPOSED CONCLUSION #57</u>     Because Fuks has failed to establish any claim for unjust enrichment, Fuks is not entitled to any damages under this claim for relief.

<u>OBJECTIONS TO PROPOSED CONCLUSION OF LAW #57</u>

Plaintiff objects to Defendant's proposed conclusion of law #47 because it is an invalid and inaccurate conclusion based on the credible evidence at trial. As set forth in Plaintiff's proposed findings of fact and conclusions of law, the credible evidence at trial established each element of Plaintiff's claim against Defendant for unjust enrichment.

1

DATED: November 29, 2021          ASHBY LAW FIRM P.C.

2

Joseph R. Ashby

3

4

EVERSHEDS SUTHERLAND LLP

5

William T. O'Brien

John W. Lomas, Jr.

6

7

By: ____/s/ Joseph R. Ashby____

8

Joseph R. Ashby

Attorneys for Plaintiff Pavel Fuks

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS AND CONCLUSIONS