UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| PAVEL FUKS, | Case No. 8:19-cv-01212-FLA (JDEx) |
|---|---|
| Plaintiff, | **ORDER FOLLOWING BENCH TRIAL** |
| v. | |
| YURI VANETIK, | Date: September 21-23, 2021 |
| Defendant. | Courtroom: 6B |

## INTRODUCTION

This diversity action concerns Plaintiff Pavel Fuks ("Plaintiff" or "Fuks"), a citizen and resident of Ukraine, and Defendant Yuri Vanetik ("Defendant" or "Vanetik"), a U.S. citizen and resident of California. Dkt. 65 (Final Pretrial Conference Order, "FPCO") at 3. Plaintiff alleges he paid Defendant $200,000 for a "VIP" events package for Donald Trump's 2017 U.S. presidential inauguration in Washington, D.C., but it "was all a scam." Dkt. 1 ("Compl.") ¶ 1. The Complaint states six causes of action against Defendant for: (1) promissory fraud; (2) intentional misrepresentation; (3) breach of contract; (4) conversion; (5) unjust enrichment; and

(6) violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"). *See generally* Compl.

The court held a bench trial beginning September 21, 2021. After the close of evidence on September 23, 2021, Plaintiff dismissed his sixth cause of action for violation of the UCL. Dkt. 92 (Reporter's Transcript Volume III ("Vol. III")) at 56. The parties submitted proposed findings of fact and conclusions of law on November 19, 2021. Dkts. 96, 97. Plaintiff also filed objections to Defendant's proposed findings on November 29, 2021. Dkt. 99.

After considering and weighing the evidence presented at trial, and evaluating the credibility of witnesses, the court FINDS in Plaintiff's favor on his promissory fraud and breach of contract claims and AWARDS Plaintiff $200,000 in compensatory damages, plus interest. The findings below explain the court's award.

## **CREDIBILITY DETERMINATIONS**

Plaintiff and Defendant told vastly different stories at trial. In short, Plaintiff testified he paid Defendant $200,000 in November 2016 for two "VIP" packages for the 2017 presidential inauguration that never came to fruition. Dkt. 90 (Reporter's Transcript Volume I ("Vol. I")) at 37, 43-44; Ex. 3. Defendant, on the other hand, testified that this payment was not related to the inauguration, but was a partial payment for consulting services his company, Odyssey Management LLC ("Odyssey"), performed in April 2016 for Plaintiff's close friend, Gennady Kernes ("Kernes").[1] Reporter's Transcript Volume II ("Vol. II") at 50-53, 139. Specifically, Defendant testified that Odyssey was engaged in two agreements concerning the Kernes project: (1) Defendant would fly to Rome, Italy and create a strategy memorandum for $65,000; and (2) Defendant would perform additional consulting services for a $250,000 initial retainer and $50,000 monthly retainer for six months.

---

[1] According to Defendant, Kernes—the mayor of Kharkiv, Ukraine—was indicted for multiple crimes after surviving an assassination attempt. Vol. I at 15; Vol. II at 39, 139.

2

Vol. II at 46; Ex. 10 ("Consulting Agreement"). According to Defendant, he agreed to create a program of inauguration events for Plaintiff as a courtesy when Plaintiff agreed to start paying the outstanding Odyssey bill. Vol. II at 55.

The court's judgment in this matter, therefore, ultimately hinges on whether it believes Plaintiff or Defendant. The court finds instructive Ninth Circuit Model Jury Instruction 1.14, which provides guidance to jurors to assess the credibility of witnesses. The factors include: (1) the opportunity and ability of the witness to see or hear or know the things testified to; (2) the witness's memory; (3) the witness's manner while testifying; (4) the witness's interest in the outcome of the case, if any; (5) the witness's bias or prejudice, if any; (6) whether other evidence contradicted the witness's testimony; (7) the reasonableness of the witness's testimony in light of all the evidence; and (8) any other factors that bear on believability. Ninth Cir. Model Jury Instr. (Civil) 1.14 (2017).

At trial, the court admitted into evidence Plaintiff's Exhibit 1, consisting of message exchanges between Plaintiff and Defendant on the WhatsApp Messenger mobile phone application. According to the messages, on November 18, 2016, after the presidential election in the United States, Defendant offered to sell Plaintiff "VIP" tickets to the inauguration for "100k per person." Ex. 1 at 22. That same day, Plaintiff responded he would take two tickets. *Id.* Three days later, on November 21, 2016, Defendant sent an invoice for $200,000 to Plaintiff's coworkers via email. Ex. 2; Vol. I at 35-36. The next day, Plaintiff's company, BEM Global, sent Odyssey $200,000 via SWIFT. Ex. 3; Vol. I at 37-38. The WhatsApp messages show Plaintiff and Defendant exchanging numerous communications about inauguration events in the aftermath. *See* Ex. 1 at 23-29. Plaintiff also requested a refund from Defendant in the months following the January 2017 inauguration. *Id.* at 28-29.

The court finds the contemporaneous WhatsApp messages and chronology of events support Plaintiff's assertion that the $200,000 payment was for two "VIP" inauguration packages organized by Defendant. At trial, Defendant claimed the

WhatsApp messages in Exhibit 1 were fabricated and/or out of sequence. *E.g.*, Vol. II at 101-03, 109. Plaintiff, however, credibly testified that he exported all WhatsApp messages between himself and Defendant into a data file to produce Exhibit 1, and did not alter any messages. Vol. I at 17-18. Notably, Defendant did not offer his own fulsome version of WhatsApp messages into evidence to compete with Exhibit 1. Rather, Defendant offered into evidence a small sample of messages that match the messages in Exhibit 1, corroborating Exhibit 1's authenticity. *See* Ex. 13.

Defendant also claimed that the Federal Bureau of Investigation took his mobile telephone in February 2017 to investigate threats Plaintiff made to him, and the messages in Exhibit 13 were what he could find upon return of the telephone. Vol. II at 119-20, 134-35. The court finds Defendant's version of events incredible, particularly in light of the other evidence presented at trial. Defendant offered no documents or emails showing Odyssey had performed consulting work for Kernes. *See* Vol. II at 94, 140. Although Defendant submitted into evidence a document dated September 21, 2016, entitled "ODYSSEY – PAVLO FUKS Confidential Consulting Agreement," *see* Ex. 10, Plaintiff credibly testified he had never seen the document and the signature on the last page was not his.[2] Vol. I at 56-57.

Further, although the $200,000 invoice sent to BEM Global on November 21, 2016 purported to be for an "Earned retainer" for "Project Analysis, business plan development, and Due Diligence; legal and accounting management; public relations," *see* Ex. 2, Plaintiff credibly testified Defendant required the invoice for the

---

[2] To be sure, Eric Rogers, Defendant's former partner at Odyssey, testified that Odyssey performed services for Kernes and there was an outstanding bill. Vol. II at 146-49. Ultimately, however, whether Odyssey was in fact owed money for consulting services is a separate question from the purpose of the $200,000 payment made on November 22, 2016. As the court, below, finds the $200,000 payment was made in exchange for attending "VIP" inauguration events, the fact that Odyssey may have consulted for Kernes in the past is irrelevant to Plaintiff's claims in the instant action.

4

"VIP" tickets to be labeled in this manner. Vol. I at 36. The $200,000 payment was also sent on November 22, 2016, only four days after Plaintiff told Defendant he would buy two "VIP" tickets costing $100,000 per person, whereas the consulting services allegedly performed for Kernes occurred months prior in April 2016. Ex. 3; Ex. 1 at 22; Vol. II at 50. Finally, the court was provided with no credible evidence that Plaintiff personally agreed to pay Odyssey $200,000 for consulting services supposedly performed on behalf of Kernes.

In sum, the court finds Plaintiff's testimony regarding the sequence of events more credible than Defendant's,[3] and supported by the WhatsApp messages in Exhibit 1, which the court finds authentic and controlling. As the WhatsApp messages make clear the $200,000 payment was for two "VIP" packages for the 2017 presidential inauguration, the findings of fact outlined below largely adopt Plaintiff's version of events. The court limits its findings to the facts relevant to the claims and defenses raised in the parties' post-trial briefs. *See* Dkts. 96, 97.

/ / /

/ / /

/ / /

---

[3] The court also notes a jury previously found Defendant liable for fraud in an unrelated action. Vol. II at 125-26. Although Plaintiff admitted he was subject to a five-year travel ban in the United States, was recently sanctioned by Ukraine, and was the subject of an arrest warrant issued by Russia, these admissions were not relevant to the claims in this action and did not bear on Plaintiff's character for truthfulness or untruthfulness. Vol. I at 59, Vol. II at 15; *see* Fed. R. Evid. 608.

# FINDINGS OF FACT[4]

Plaintiff and Defendant met for the first time in the spring of 2016, when Plaintiff's close friend Gennady Kernes—then mayor of Kharkiv, Ukraine—introduced Plaintiff to Defendant. Dkt. 65 (FPCO, Admitted Facts ("AF")) ¶ 3; Vol. I at 14-15. At that time, Defendant hoped to be retained by the city of Kharkiv to promote its interests in the United States, and Defendant claimed to be well-connected politically in the United States. *Id*. After that initial meeting, Plaintiff and Defendant kept in touch and communicated with each other via text message using the WhatsApp Messenger mobile phone application. Vol. I at 16-19; Ex. 1.

In the fall of 2016, Plaintiff and Defendant exchanged messages about the United States presidential election. Ex. 1 at 20. After Donald Trump won the election, Defendant told Plaintiff that some of his close friends had received major appointments. *Id*. at 22. On November 16, 2016, Defendant noted the inauguration was set to take place on January 20, 2017, and advised Plaintiff the "[t]ime to book everything [to attend the inauguration] is now." *Id*. Defendant elaborated that "[t]here are guests that get tickets [to the inauguration] and guests that get VIP treatment. Regular attendance is a joke." *Id*.

/ / /

/ / /

---

[4] "In bench trials, Fed. R. Civ. P. 52(a) requires a court to find the facts specially and state separately its conclusions of law thereon." *Vance v. Am. Haw. Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986) (internal quotation omitted). "One purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision. This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions." *Id*. (citations omitted). The characterization of a finding as one of "fact" or "law" is not controlling. To the extent that a finding is characterized as one of "law" but is more properly characterized as one of "fact" (or vice versa), substance shall prevail over form. Further, to the extent the court has relied on evidence to which Plaintiff objects, *see* Dkt. 99, those objections are overruled.
6

On November 17, 2016, Defendant told Plaintiff the "[t]ime to get tickets is next 5 days. Then, they go up. Next year they will be at least 3 times the price – at best." *Id.* Plaintiff responded he wanted to buy "the very best," and asked Defendant how much the tickets would cost. *Id.* Defendant responded he would verify costs and "explain several options." *Id.* On November 18, 2016, Defendant messaged Plaintiff: "Best VIP 100k per person. 3 days includes top briefings tickets to inaugural ball, etc. photo opps most likely. There are levels below that as well." *Id.* Defendant further noted that "[h]otels should be booked now and payments handled as soon as possible." *Id.* Plaintiff responded he would take two "VIP" tickets. *Id.*; Vol. I at 33. Defendant responded: "Passports email to me. Will send you wire information later today," and gave his email address to Plaintiff. Ex. 1 at 22.

Initially, Defendant instructed Plaintiff to wire payment to a Citibank account for his attorney's client trust account—"Hamilton Law Offices Client Trust Account." *Id.*; Vol. I at 33-34. Defendant also instructed Plaintiff to note that the wire was for "legal services." *Id.* Two days later, however, Defendant sent an invoice for $200,000 to Plaintiff's coworkers via email, and asked Plaintiff to pay in accordance with that invoice instead. Ex. 2; Vol. I at 34-36. The $200,000 invoice was from Defendant's company (Odyssey) to Plaintiff's company (BEM Global), with the description: "Project Analysis, business plan development, and Due Diligence; legal and accounting management; public relations. Earned retainer." Ex. 2. The following day, on November 22, 2016, Plaintiff wired Odyssey $200,000 for the "VIP" tickets from an account held by BEM Global, per Defendant's instructions. Vol. I at 36-38, 54; Ex. 3.

On November 24, 2016, Plaintiff asked Defendant when he would send the program of events for the package he had purchased. Ex. 1 at 23; Vol. I at 38-39. Defendant responded: "Should have some type of schedule next week. We are all waiting for details." Ex. 1 at 23. On November 29, 2016, Defendant messaged Plaintiff: "Hi Pavel. Everything is done. I now have what seems to be the final

7

layout. There are a few 'nuances' to go over. Let's chat a little later." *Id.* On November 30, 2016, Defendant sent Plaintiff the following details for the "VIP package" he had purchased:

- Cabinet Dinner – 2 tickets
- Victory Reception – 4 tickets
- Inaugural Concert and Fireworks – 4 tickets
- Parade – 4 VIP Tickets
- Inaugural Ball Premier Access – 2 tickets
- Presidential Swearing-In Ceremony – 2 tickets

Ex. 1 at 23; Vol. I at 39. Plaintiff asked Defendant to confirm that all the tickets Defendant had listed in his message were, in fact, the events of the "VIP" package Plaintiff had purchased. *Id.* Defendant confirmed they were and stated there were also "a few extras." Ex. 1 at 24. Later, Defendant told Plaintiff that if he wanted a better chance to meet president-elect Trump, Plaintiff would have to pay an additional $350,000.[5] *Id.* at 25; Vol. I at 39-40.

On January 13, 2017, one week before the inauguration, Defendant told Plaintiff there were "tons of changes to the program." Ex. 1 at 26. Two days later, Defendant messaged Plaintiff: "Hi pavel. I should have final schedule sent to me today. Will forward it to you. I will be leaving for DC tomorrow." *Id.* at 27. On January 17, 2017, Plaintiff asked Defendant to send him the schedule of all events. *Id.* Defendant responded: "Hey Pavel. I just arrived to DC. I am waiting for a revised one. There is a problem with dinner. Trying to fix it... should have it in am. What time are you flying in?" *Id.* Plaintiff responded he was arriving on January 19, 2017, the day before the inauguration. *Id.* Defendant replied: "I will send you schedule in about an hour or so. We got fucked on the dinner. I am working on fixing it. I hate

---

[5] No evidence was introduced at trial to establish Plaintiff paid Defendant any money beyond the $200,000 payment to Odyssey.

8

this Inauguration. It is nothing but headaches. It would be better if you came tomorrow or today." *Id.*

During Plaintiff's time in Washington, Defendant never gave Plaintiff tickets to the cabinet dinner, victory reception, inaugural concert and fireworks, parade, inaugural ball, or presidential swearing-in ceremony. Vol. I at 42-44, 47. Defendant was often unavailable and did not answer his telephone. Vol. I at 46-47. Defendant did provide Plaintiff three tickets to an event hosted by the Texas State Society the day before the inauguration called "Black Tie & Boots," which Defendant had purchased one week prior for $2,500 each. Exs. 5, 6; Vol. I at 44.

The morning of the inauguration, Defendant told Plaintiff he would have a driver pick up Plaintiff and his guests. Ex. 1 at 27-28; Vol. I at 45. The car never arrived. Vol. I at 45. As a result, Plaintiff and his party walked towards the inauguration site in the rain in the hopes of attending. Vol. I at 45-46. When they approached an access point to the inauguration, they were not allowed to enter because they did not have passes. *Id.* Plaintiff and his guests returned to their hotel, where they watched the inauguration ceremony on television at the hotel bar. Vol. I at 46.

Later that day, Defendant sent a car to take Plaintiff and his guests to a party located in a midrise building overlooking the Capitol. *Id.* at 47. By the time Plaintiff arrived, most attendees had left, the food had been eaten, and the staff were cleaning the venue.[6] *Id.*; Vol. II at 10. Defendant also invited Plaintiff and his friends to a party on inauguration day where two members of Congress, Representatives Ed Royce and Kevin McCarthy, were in attendance. Vol. II at 9, 72-73. During the event, Defendant introduced Plaintiff to elected officials, including United States Senator Cory Gardner. *Id.*

---

[6] While Defendant testified that Odyssey paid for tickets to this event, Vol. II at 60, no evidence was introduced at trial showing the payment or cost of attendance.

9

Plaintiff left Washington the day after the inauguration, on January 21, 2017. *See* Ex. 1 at 28. Via WhatsApp message, Plaintiff asked Defendant to let him know when it would be a convenient time to discuss a refund. *Id*. Defendant told Plaintiff he did not receive tickets to inaugural events because Defendant had been cheated by third parties organizing the events. Vol. I at 49-50. Plaintiff asked Defendant to work with Plaintiff's lawyers to recover the money, identify who had cheated him, and provide documentation, such as receipts, showing payments for event tickets. *Id.* at 49; *see also* Ex. 1 at 28-29. Defendant agreed to do so, but never did. Vol. II at 14-15.

On March 8, 2017, Plaintiff requested an update from Defendant. Ex. 1 at 28. Defendant responded the next day, stating he could not send Plaintiff the agreements with third parties who had organized events due to a non-disclosure agreement. *Id.* at 28-29. Defendant never provided Plaintiff with a copy of the alleged non-disclosure agreement. Vol. I at 53.

Another month passed, and Plaintiff again asked Defendant to provide documentation that supported Defendant's story. Ex. 1 at 29. On April 8, 2017, Plaintiff wrote to Defendant: "Dear Yuri, you promised to give me the contact info of the people who cheated me and took my money. I'm planning to get the money from them through the court." *Id.* Defendant did not respond. *Id.* Plaintiff followed up on May 9, 2017, asking when Defendant would return the $200,000. *Id.* Defendant responded: "So now you crossed the line. Get this straight: I do not owe you … any money. In fact, you owe us for the meetings in Rome and subsequent work." *Id.* Defendant never refunded Plaintiff or BEM Global the $200,000. Vol. I at 54.

## CONCLUSIONS OF LAW

### I.   Promissory Fraud

Plaintiff's first claim is for promissory fraud. "'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such

intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996). To recover on a theory of promissory fraud, Plaintiff must show by a preponderance of the evidence that: (1) Defendant made a promise to Plaintiff; (2) Defendant did not intend to perform this promise when he made it (i.e., Defendant knew the promise was false); (3) Defendant intended that Plaintiff rely on this promise; (4) Plaintiff reasonably relied on Defendant's promise; (5) Defendant did not perform the promised act; (6) Plaintiff was harmed; and (7) Plaintiff's reliance on Defendant's promise was a substantial factor in causing the harm. *See Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060-65 (2012); *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 973-77 (1997). "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." *Lazar*, 12 Cal. 4th at 638. If the contract is enforceable, Plaintiff "has a cause of action in tort as an alternative at least, and perhaps in some instances in addition to his cause of action on the contract." *Id.* (internal citation omitted).

Here, the court finds Plaintiff presented sufficient evidence at trial to establish his claim for promissory fraud. Defendant promised to provide Plaintiff a "VIP" inauguration events package for two people. Ex. 1 at 22. Defendant did not provide Plaintiff a list of the events included in the supposed package Plaintiff had bought until several days after Plaintiff paid, changed the events purportedly included in the package several times, and did not provide tickets for events he had "confirmed" were included in the package. *Id.* at 23, 26-27. When Plaintiff confronted Defendant with the lack of tickets to inaugural events, Defendant ultimately blamed unnamed third parties who appeared to have played no role in the events stated. *Id.* at 29. The evidence in the record, therefore, sufficiently demonstrates Defendant intended for Plaintiff to rely on his promise to provide two "VIP" inaugural packages to induce

Plaintiff to pay Odyssey $200,000, and that Defendant did not intend to perform at the time the promise was made.[7]

Plaintiff also justifiably relied on Defendant's promise to arrange a "VIP" inauguration experience, as Defendant claimed to be politically well-connected in the United States. AF ¶ 3. Although Defendant facilitated a few events for Plaintiff to attend when he was in Washington, D.C., those events differed from and were not substantially equivalent to the "VIP" experience he had promised. Notably, Defendant did not provide any tickets for a cabinet dinner, the inaugural parade, the inaugural concert and fireworks, or for the presidential swearing-in ceremony. While Defendant provided tickets for a "Black Tie & Boots" event, Defendant paid just $2,500 per ticket the week before. Similarly, while Defendant sent a car to deliver Plaintiff to an event in a midrise building overlooking the Capitol, that event appears to have ended by the time Plaintiff and his guests arrived. And although Defendant introduced Plaintiff to a few elected officials at another event on inauguration day, the tickets and experience Defendant provided did not match his promises both before and after Plaintiff made the $200,000 payment, nor were they substantially equivalent to the "VIP" package promised.

Plaintiff's detrimental reliance on Defendant's promise for a "VIP" inauguration experience directly caused Plaintiff to lose $200,000. The court, therefore, finds in Plaintiff's favor on his promissory fraud claim. Plaintiff is entitled to recover $200,000 in compensatory damages.[8]

---

[7] Indeed, it appears Defendant may have even intended to falsely offer Plaintiff a "VIP" inauguration experience to induce Plaintiff to pay Odyssey for consulting services Defendant believed he was owed for the Kernes project.

[8] In his Proposed Findings of Fact and Conclusions of Law, Defendant argues that the $200,000 payment was between BEM Global and Odyssey—not Plaintiff and Defendant—and that Plaintiff did not present evidence at trial sufficient to "pierce the corporate veil" to hold Defendant personally liable. Dkt. 96-1 at 8. The corporate veil

## II. Intentional Misrepresentation

To establish his claim for intentional misrepresentation, Plaintiff must prove: (1) Defendant represented to Plaintiff that a fact was true; (2) Defendant's representation was false; (3) Defendant knew that the representation was false when he made it, or that he made the representation recklessly and without regard for its truth; (4) Defendant intended Plaintiff rely on the representation; (5) Plaintiff reasonably relied on Defendant's representation; (6) Plaintiff was harmed; and (7) Plaintiff's reliance on Defendant's representation was a substantial factor in causing his harm. *Jud. Council of Cal. Civil Jury Instructions* ("CACI") No. 1900. "The law is well established that actionable misrepresentations must pertain to past or existing material facts." *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014).

Although Defendant falsely promised Plaintiff he would organize "VIP" inauguration packages for two people, the court finds Defendant did not make an actionable misrepresentation of a past or existing fact. Plaintiff fails to adequately identify a specific false statement Defendant made that induced Plaintiff to pay $200,000. Plaintiff argues Defendant falsely represented to Plaintiff that he could have "VIP" tickets to the 2017 inauguration, knowing that Plaintiff, as a foreign national, could not buy tickets to the top inauguration events. Dkt. 97-1 at 11. However, Defendant's offer to sell Plaintiff tickets and statements that they needed to be purchased by a certain date do not constitute an affirmative statement that it is legal for Plaintiff to purchase tickets to inaugural events. It is also unclear whether Plaintiff could have attended inaugural events as a guest of an American donor, or whether

---

doctrine, however, does not shield Defendant from his own tortious conduct. *See Frances T. v. Vill. Green Owners Ass'n*, 42 Cal. 3d 490, 504 (1986) ("Directors are liable to third persons injured by their own tortious conduct regardless of whether they acted on behalf of the corporation and regardless of whether the corporation is also liable."). The evidence in the record establishes that Plaintiff lost $200,000 in reliance on Defendant's false promises. Defendant's argument, therefore, is without merit.

Plaintiff could have attended some events and not others. Indeed, Plaintiff testified that he attended three events during his time in Washington. Vol. I at 44-45; Vol. II at 9-10. Accordingly, the court finds Plaintiff has not met his burden to show Defendant made a false representation, and Plaintiff's claim for intentional misrepresentation fails.

### III. Breach of Contract

For Plaintiff's breach of contract claim to succeed, he must prove: (1) a contract existed between Plaintiff and Defendant; (2) Plaintiff performed his obligations under the contract; (3) Defendant breached his obligations under the contract; and (4) Defendant's breach harmed Plaintiff. *See* CACI No. 303. To show that a contract was created, Plaintiff must prove that: (1) the contract terms were clear enough that the parties could understand what each was required to do; (2) the parties agreed to give each other something of value; and (3) the parties agreed to the terms of the contract. CACI No. 302. The terms of a contract may be sufficiently clear "even though it empowers one or both parties to make a selection of terms in the course of performance." Restatement (Second) of Contracts § 34(1) (1981). Furthermore, "[a] contract in writing may be modified by a contract in writing." CACI No. 313.

The court finds the WhatsApp messages Plaintiff and Defendant exchanged created a written contract between the parties.[9] Specifically, on November 18, 2016, Defendant texted Plaintiff: "Best VIP 100k per person. 3 days includes top briefings tickets to inaugural ball, etc. photo opps most likely." Ex. 1 at 22. Plaintiff

---

[9] Defendant argues Plaintiff's breach of contract claim is barred by the statute of limitations because a two-year statute of limitations applies to oral agreements under California law. Dkt. 96-1 at 9; *see also* Cal. Code of Civ. P. § 339(a). For written contracts, however, a four-year statute of limitations applies. Cal. Code of Civ. P. § 337(a). The Complaint in this action was filed in June 2019. Dkt. 1. As the court finds the parties' WhatsApp messages formed a written contract that was breached in January 2017, the claim is timely.

responded: "I'll take two tickets… ." *Id.* Plaintiff then performed his obligations under the contract by wiring Odyssey $200,000 four days later. Ex. 3.

On November 30, 2016, Defendant confirmed the "VIP" package included tickets to the following events:

- Cabinet Dinner – 2 tickets
- Victory Reception – 4 tickets
- Inaugural Concert and Fireworks – 4 tickets
- Parade – 4 VIP Tickets
- Inaugural Ball Premier Access – 2 tickets
- Presidential Swearing-In Ceremony – 2 tickets

Ex. 1 at 23; Vol. I at 39.[10]

Defendant, however, did not sufficiently perform under the contract as stated above. Defendant failed to provide a three-day itinerary for the inauguration in January 2017, and did not provide tickets to the presidential swearing-in ceremony or numerous other events Defendant later confirmed were part of the "VIP" package. *See* Ex. 1 at 23. The court, therefore, finds in Plaintiff's favor on his breach of contract claim, and Plaintiff is entitled to recover $200,00 in compensatory damages.

## IV. Conversion

Although cash ordinarily cannot be the subject of a cause of action for conversion, "when the money at issue is a specific identifiable sum … that has been misappropriated, a conversion claim can be made." *SP Inv. Fund I LLC v. Cattell*, 18 Cal. App. 5th 898, 907 (2017). To succeed on his conversion claim, Plaintiff must prove: (1) Plaintiff had a right to possess the specific sum of $200,000; (2) Defendant substantially interfered with Plaintiff's property by knowingly or intentionally refusing to return the money after Plaintiff demanded its return; (3) Plaintiff did not

---

[10] Defendant testified he sent Plaintiff another itinerary of inaugural events approximately one month later, as outlined in Exhibit 9. Vol. II at 68-70. The parties, however, do not dispute Plaintiff was not provided tickets to attend those events.

consent; (4) Plaintiff was harmed; and (5) Defendant's conduct was a substantial factor in causing Plaintiff's harm. *See* CACI No. 2100. "[C]onversion is a strict liability tort. It does not require bad faith, knowledge, or even negligence; it requires only that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession." *Voris v. Lampert*, 7 Cal. 5th 1141, 1158 (2019).

Plaintiff argues his conversion claim succeeds because Defendant failed to use the $200,000 payment as authorized when Defendant did not buy "VIP" inauguration packages, and Defendant willfully refused to return the money after Plaintiff asked for a refund. Dkt. 97-1 at 13. Plaintiff does not cite any legal authority, however, showing he retained a possessory interest in the $200,000 sent to Defendant's company. Although Plaintiff is entitled to a refund, Plaintiff does not adequately demonstrate he continued to have an independent right to possess the $200,000 outside of his claim for breach of contract and compensatory damages. Under Plaintiff's theory of conversion, any breach of contract could also be brought as a claim for conversion. Plaintiff also does not cite any legal authority for the proposition that money lost as a result of a false promise can also constitute conversion. Plaintiff's conversion claim, therefore, fails.

## V. Unjust Enrichment

Plaintiff's final claim is for unjust enrichment. California, however, does not recognize a separate cause of action for unjust enrichment. *See Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim."). In some circumstances, courts have construed purported claims for unjust enrichment as quasi-contract claims seeking restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). But "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996); *see also Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012)

("A plaintiff may not … pursue or recover on a quasi-contract if the parties have an enforceable agreement regarding a particular subject matter."). As the court has found Defendant breached the parties' written contract, Plaintiff's claim for unjust enrichment fails.

## VI. Award

"When one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort." *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 78 (1993), *as modified on denial of reh'g* (Apr. 8, 1993). As set forth above, Plaintiff has succeeded on claims sounding in both contract and tort. Although the Complaint in this action prayed for punitive damages in light of the tort claims, *see, e.g.*, Compl. ¶ 82, Plaintiff sought to recover only $200,000 in compensatory damages at trial. Vol. III at 48. Plaintiff also abandoned his claim for reimbursement of the cost of travel to Washington. Vol. II at 25. The court, therefore, AWARDS Plaintiff the sum of $200,000, plus pre- and post-judgment interest. *See Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 714 (9th Cir. 1992) (noting the trial judge has discretion to award pre-judgment interest); 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

/ / /

/ / /

/ / /

**CONCLUSION**

For the reasons stated above, the court finds Plaintiff is the prevailing party and AWARDS Plaintiff $200,000 plus pre- and post-judgment interest. No later than five (5) business days from the filing of this Order, Plaintiff's counsel shall submit a proposed Judgment[11] and email a copy in Word format to the courtroom deputy. Any motion for attorney's fees must be filed within 14 days after the entry of Judgment. *See* Fed. R. Civ. P. 56(2)(B)(i).

IT IS SO ORDERED.

Dated: July 19, 2022

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[11] Plaintiff's Proposed Conclusions of Law seek pre- and post-judgment interest under California law. Dkt. 97-1 at 14-15. However, "[i]n diversity actions brought in federal court a prevailing plaintiff is entitled to pre-judgment interest at state law rates while post-judgment interest is determined by federal law." *In re Cardelucci*, 285 F.3d 1231, 1235 (9th Cir. 2002). The proposed Judgment, therefore, should reflect an award of pre-judgment interest under California law and post-judgment interest under federal law.