**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 9 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PAVEL FUKS, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> YURI VANETIK, <br><br> Defendant-Appellant. | No.   22-55794 <br><br> D.C. No. <br> 8:19-cv-01212-FLA-JDE <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted October 16, 2023
Pasadena, California

Before: CLIFTON and SANCHEZ, Circuit Judges, and KORMAN,** District Judge.

Yuri Vanetik appeals from the judgment of the district court entered in favor of Pavel Fuks on the latter's breach of contract and promissory fraud claims, for which he was awarded $200,000 in compensatory damages. We have jurisdiction

---

\*   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*   The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

under 28 U.S.C. § 1291. We review a district court's findings of facts following a bench trial for clear error and its conclusions of law de novo. *Dolman v. Agee*, 157 F.3d 708, 711 (9th Cir. 1998). We affirm.

    1.    The parties first dispute whether we should review the district court's determination that the parties created a valid contract, pursuant to which Fuks agreed to pay $200,000 for Vanetik to obtain two VIP ticket packages to Donald Trump's 2017 presidential inauguration ceremonies, de novo or for clear error. Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (citation omitted). "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed. But if the material facts are certain or undisputed, the existence of a contract is a question for the court to decide." *HM DG, Inc. v. Amini*, 162 Cal. Rptr. 3d 412, 418 (Cal. Ct. App. 2013) (quoting *Bustamante v. Intuit, Inc.*, 45 Cal. Rptr. 3d 692, 699 (Cal. Ct. App. 2006)) (internal

quotation marks omitted). Under either standard of review, we agree with the district court that the parties formed an enforceable contract.

Based on an assessment of the credibility of the testimony of the parties and a review of the messages they exchanged via the WhatsApp Messenger mobile phone application, the district court correctly found that Vanetik offered Fuks "[b]est VIP 100k per person. 3 days includes top briefings tickets to inaugural ball, etc. photo opps most likely." Fuks replied, "I'll take two tickets." Fuks then wired Vanetik $200,000, via their respective companies, in accordance with Vanetik's instructions.

Vanetik argues that no valid contract was created because the $200,000 was transferred between Fuks's company, BEM Global Corp. ("BEM Global") and Vanetik's company, Odyssey Management LLC ("Odyssey"), and that, therefore, the identity of the contracting parties was unclear and did not reflect an exchange of consideration between Vanetik and Fuks personally. The WhatsApp messages indicate that Vanetik and Fuks were the only parties to the agreement; BEM Global and Odyssey are nowhere mentioned in the messages. Moreover, it is immaterial to the validity of the contract that the consideration flowed from BEM Global to

Odyssey. *See Cechettini v. Consumer Assocs., Ltd.*, 67 Cal. Rptr. 15, 17 (Cal. Ct. App. 1968) (holding contract valid even if consideration flowed to a third party).

Vanetik also contends that "[t]here was never a meeting of the minds as to exactly what the package would include, or even how much it would cost." Fuks made the $200,000 payment several days *after* Vanetik offered him the VIP tickets and sent him an invoice, but *before* Vanetik specified the six events constituting the VIP ticket package. These events included a cabinet dinner, a victory reception, an inaugural concert and fireworks, a parade, an inaugural ball with premier access, and a presidential swearing-in ceremony. This sequence of events suggests, first, that Fuks and Vanetik spoke and acted as though they had made a definite agreement for the two tickets, and second, that the exact composition of the package was not an "essential condition that both parties understood was necessary to complete the negotiations and create a binding" contract. *Bustamante*, 45 Cal. Rptr. 3d at 702. Moreover, the price for the core, six-event inauguration package was certain—$100,000 per ticket—even if the *additional* events Vanetik offered Fuks were of various prices.

2.  The district court did not clearly err in finding that Vanetik breached the contract. Vanetik failed to provide Fuks the tickets to six specific inaugural events that Vanetik confirmed he had purchased. And as the district court noted,

4

Vanetik also did not give Fuks tickets to other events that were of "substantially equivalent [value] to the 'VIP' package promised."

3.  The district court did not clearly err in finding the evidence sufficient to establish Fuks's promissory fraud claim. The elements of a promissory fraud action are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *See Lazar v. Superior Court*, 909 P.2d 981, 984 (Cal. 1996).

The parties mainly dispute whether Vanetik intended not to fulfill his promise of providing Fuks the VIP inauguration tickets. Vanetik's fraudulent intent may be inferred from his conduct subsequent to promising to secure the tickets. *See Miller v. Nat'l Am. Life Ins. Co. of Cal.*, 126 Cal. Rptr. 731, 735 (Cal. Ct. App. 1976) (explaining that intent not to perform may be inferred from subsequent conduct). Vanetik did not give Fuks the tickets Vanetik had confirmed were included in the package, which suggests Vanetik never purchased or obtained them. Indeed, Vanetik never supplied Fuks documentation to substantiate his purchase of the VIP tickets and testified that he possessed only the receipts for the "Black Tie & Boots" event. Vanetik then blamed unnamed third parties for his failure to obtain the VIP tickets when Fuks confronted him. This appears to be a post-hoc excuse because Vanetik did not mention the involvement of third parties until approximately four months after he agreed to provide Fuks the VIP tickets.

5

6

For these reasons, the district court did not clearly err in finding that Vanetik did not intend to perform when he made his promise.

**AFFIRMED.**